Points decided.

[Argued October 20; decided November 13, 1893.]

# SABIN v. COLUMBIA FUEL CO.

[S. C. 34 Pac. Rep. 692.]

1. FRAUDULENT MORTGAGE. — A mortgage designed and made for the benefit of the mortgagor, and to enable him to continue in business by.placing his property beyond the reach of legal process, is void as to creditors, although it may be intended in good faith for the ultimate benefit of all the creditors by preventing a sacrifice of the property.

2. IDEM — MORTGAGE FOR FUTURE ADVANCES. — A person or corporation in the conduct of its business may mortgage its property to secure future as well as present advances ( *Hendrix* v. *Gore*, 8 Or. 407; and *Nicklin* v. *Betts Spring Co*. 11 Or. 406, cited and approved); and a provision in a mortgage for securing future advances, not stipulating that the mortgagor may continue in business, or obligating the mortagee to make any additional advances, does not render the mortgage void as against creditors, although the mortgagor was in fact unable to pay all his debts when the security was given.

3. FRAUD — BURDEN OF PROOF.—There is an essential difference between the material fact of fraud, and the circumstances tending to prove it; while some of the circumstances surrounding the making of a mortgage may point to the conclusion that it was intended to hinder and delay creditors, yet if they are explainable consistently with honesty and good faith, the mortgage ought to be sustained, and the burden of proving the fraud always rests on the plaintiff.

4. FRAUDULENT CONVEYANCE — PARTICIPATION OF MORTGAGEE.—The fact that a mortgagor may have intended to delay other creditors by giving a mortgage will not affect the validity of the instrument unless the mortgagee also participated in the fraudulent intent.

5. INSOLVENCY DEFINED — PREFERENCES BY CORPORATIONS. — The term " insolvency," as used in bankrupt and insolvency proceedings, denotes the inability of a party to pay his debts as they become due in the ordinary course of business, but for general purposes the popular meaning of the word is preferable, viz. the insufficiency of the entire property of an individual or corporation to pay his or its debts. Within this definition, so long as a corporation is a " going concern," engaged in the conduct of its regular business, and not known or believed to be insolvent by its officers and managers, with assets exceeding its liabilities, it is not in such a state of insolvency as will preclude its executing a mortgage on its property in good faith to secure a debt of the corporation, even though the debt is one for which the directors are security.

Statement of the case.

6. PREFERENCES BY INSOLVENT CORPORATION.— A corporation engaged in the business for which it was organized, although embarrassed and unable to pay its debts at maturity, is not necessarily insolvent so as to forbid preference of one creditor over another.

7. ASSETS OF INSOLVENT CORPORATION AS A TRUST FUND *— The doctrine that the entire property of an insolvent corporation constitutes a trust fund which must be administered by the directors for the proportionate benefit of all creditors, without preference, can apply, if at all, only when that point is reached in the affairs of the corporation where its managers find themselves obliged to deal with its assets in view of a suspension, but not while the corporation is in good faith engaged in its usual business, although it may in fact be insolvent.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This suit was brought by R. L. Sabin, in behalf of himself and other unsecured creditors who might join with him, against the Columbia River Lumber & Fuel Company, a corporation, the Commercial National Bank, James F. Watson, trustee, Borthwick & Fraine, partners, and H. B. Borthwick, C. W. Knowles, and D. J. Moore, to set aside certain real and chattel mortgages given by the Columbia River Lumber & Fuel Company to Watson, as trustee, to secure the sum of fifty thousand dollars due the Commercial National Bank, and also to set aside an assignment by the company direct to the bank of all its accounts and bills receivable, as further security therefor, on the ground that the mortgages and assignment are

---

* NOTE.—The trust-fund doctrine as applied to the entire assets of insolvent corporations seems to have received a new impetus from the case of *Rouse* v. *Merchants Nat. Bank,* 5 L. R. A. 378, 15 Am. St. 644, 26 Ohio St. 493, 22 N. E. 293 ( June, 1889), which was followed in *Thompson* v. *Huron Lumber Co.* 4 Wash. 600, 30 Pac. 741, and 31 Pac. 25. Since the decisions in these cases the subject has been elaborately discussed anew both in the courts and in the law magazines. Seymour D. Thompson vigorously defends the doctrine in 27 Am. Law. Rev. 846, and is seconded by Mr. W. W. Thornton in 38 Cent. Law. Jour. 240, where he cites and analyses many of the adjudged cases. The latest decisions of the federal courts are decidedly against the doctrine of the *Rouse case.* See *Gould* v. *Little Rock Ry. Co.* 52 Fed. 680; *Hollins* v. *Brierfield Coal & Iron Co.* 150 U. S. 371, 14 Sup. Ct. 127; *Brown* v. *Grand Rapids Furniture Co.* 58 Fed. 286, 20 L. R. A. 817.

void as to the creditors of the fuel company.   On the twenty-eighth and twenty-ninth of November, eighteen hundred and ninety-two, the Columbia River Lumber & Fuel Company, defendant, being indebted to its co-defendant, the Commercial National Bank, in the sum of fifty thousand dollars, upon certain overdue promissory notes, drafts, and overdrafts (upon three of which notes, amounting in the aggregate to about thirty-five thousand dollars, the defendants Borthwick, Knowles, and Moore, directors of the company, were endorsers) executed to the defendant Watson, as trustee for the bank, real and chattel mortgages upon all its property, and also assigned to the bank direct all its accounts and bills receivable to secure the payment of said indebtedness.   The mortgages were immediately filed and recorded in the proper county, and the trustee took possession of the property described in the chattel mortgages, and continued to hold the same until the appointment of a receiver in this suit.   At the time of the execution of the mortgages and assignment the lumber company was indebted in the sum of about thirty thousand dollars to divers and sundry persons, including the assignors of the plaintiff, in addition to the amount due the bank, and had property, consisting of a saw mill plant, real estate, lumber, wood, ledger accounts, and bills receivable, of the estimated aggregate

Also consult the voluminous note to *Lyons-Thomas Hardware Co.* v. *Perry Stove Co.* 22 L. R. A. 802.

On the question of whether the directors of a corporation can take security for debts due to themselves, and thereby obtain an advantage over other creditors, the courts seem to be in serious conflict. Practically all the authorities in both American and English courts will be found cited and discussed in the following cases, or in the voluminous notes attached to them, viz.: *Brown* v. *Grand Rapids Furniture Co.* 58 Fed. Rep. 286, 22 L. R. A. 817; *Mullanphy Savings Bank* v. *Schott,* 135 Ill. 655, 26 N. E. Rep. 640, 25 Am. St. Rep. 401; *Olney* v. *Conanicut Land Co.* 27 Am. St. Rep. 767, 5 L. R. A. 361, 16 R. I. 597, 18 Atl. Rep. 181; *Corey* v. *Wadsworth,* 23 L. R. A. 618, 11 So. 350; *Lyons-Thomas Hardware Co.* v. *Perry Stove Co.* 22 L. R. A. 806, note.— REPORTER.

value of about one hundred thousand dollars.    The plaintiff, who is a judgment creditor of the lumber company, claims that the mortgages are void as to creditors for the reason (1) that they are fraudulent, both in law and fact, as being made to hinder, delay, and defraud creditors; (2) that the company was insolvent at the time the mortgages . were executed, and therefore could not create a preference in favor of one creditor; and (3) that, even if an insolvent corporation can create a preference, the mortgages are void so far as they are security for notes upon which the directors of the company are endorsers.

The real estate mortgage, after describing the promissory notes, drafts, and overdrafts intended to be secured thereby, contains this stipulation: "Said conveyance is also intended as a mortgage to secure the repayment to said bank of any future advances or overdrafts which the said bank make and allow to the said grantor in the conduct of the grantor's business.    Now, therefore, if the said promissory notes, and each of them, principal and interest, and the said draft and overdraft above referred to, shall be paid when the same shall become due, or upon demand of payment where so payable, then this indenture shall be void; *provided, further,* that the said grantor, its successors or assigns, shall have paid into the said Commercial National Bank, its successors or assigns, such further sums of money (not exceeding in all the sum of ten thousand dollars), as the said bank may advance to the said grantor, or which may become owing by the grantor to the said bank at any time hereafter during the continuance of this mortgage, with interest on such further sums from the time the same shall be advanced, or become owing as aforesaid, at the rate of nine per cent per annum, payable quarterly.    But in case default shall be made in the payment of the principal or interest mentioned in said promissory notes, or either of them, or any

part thereof, or in the payment of the said draft and over-draft and future overdrafts, or any of them, or any part thereof, or the interest thereon, or any part thereof, then it shall become the duty of the said trustee hereinbefore named, upon ten days' written notice and demand therefor, to be given to said trustee by said bank, to foreclose this mortgage as by law provided, and to cause the sale of the said mortgaged premises, or so much thereof as may be necessary to pay the sums due said bank, together with such attorneys' fees as the court may adjudge reasonable for the foreclosure of said mortgage.

And whereas it has been, and is hereby, agreed between the Columbia River Lumber & Fuel Company and the Commercial National Bank, and the party of the second part herein, that time in the exact performance of each and everything herein required or agreed to be performed is of the essence of this contract; now, therefore, if the said Columbia River Lumber & Fuel Company shall neglect or fail to pay all or any of said promissory notes, drafts, overdrafts, or future overdrafts, or any of them, or any part of them, when the same shall become due and payable, or shall fail or neglect to pay the interest upon any of said demands in accordance with the terms of the agreement therefor between the said grantor herein and the said bank, or if the said grantor shall attempt to remove from its said mill any of the machinery or plant belonging thereto, or shall suffer its property to be attached, then, upon the happening of all or any of said contingencies, the entire indebtedness of said Columbia River & Fuel Company to said bank shall become at once due and payable, and it shall be the duty of said trustee to so declare the same, and upon one day's notice therefor to him given by the said bank, to foreclose said mortgage as provided by law, and to cause the sale of

said mortgaged property, or so much thereof as may be necessary to satisfy the demands of the said bank against said grantor, together with costs, disbursements, expenses, and attorneys' fees.

The chattle mortgages contain the same provisions as to future advances and overdrafts as the real estate mortgage, and provide that "in case default shall be made in the payment of the said principal sums, or any of them, or interest thereon, or any one of said installments of the principal or interest, or if said property is attempted to be removed by any one from where it is now situated, or be attached, or levied upon by the creditors of the said party of the first part, or shall be sold, transferred, or assigned, or attempted to be sold, transferred, or assigned, then said promissory notes, drafts, overdrafts, and debts shall at once become due and payable, and it shall and may be lawful for, and the said party of the first part does hereby authorize and empower the party of the second part, with the aid and assistance of any person or persons, to enter the several places where said personal property may be situate, and such other place or places as the said goods or chattels are or may be placed, and take or carry away the said goods and chattels, and sell and dispose of the same at private sale, or at public auction, upon giving one week's notice of the same in any newspaper published in said county of Multnomah, and state of Oregon, and out of the money arising therefrom to retain and pay the said sums above mentioned, and interest as aforesaid, and all charges touching the same, and counsel fees, rendering the overplus, if any, unto the said party of the first part. And it is understood that the party of the second part shall and does take possession of all the personal property described in this instrument, and shall retain the same in trust for the purposes herein expressed, and to that end may appoint any suit-

able person to hold possession of and care for said property." Testimony having been taken in open court, a decree was entered sustaining the validity of the transfers and mortgages to the bank, discharging the receiver, and dismissing the complaint, from which the plaintiff appeals.                              AFFIRMED.

*Mr. Lewis B. Cox* ( *Messrs. Wirt Minor* and *Jos. N. Teal* on the brief), for Appellant.

The instruments complained of are void as having been made with the intent to hinder, delay, and defraud the unsecured creditors of the lumber company under sections 3059, 3063, Hill's Code.   The transactions shown by the evidence to have taken place between the lumber company and the bank unquestionably are void as against other creditors under these sections:   *Van Nest* v. *Yoe,* 1 Sand. Ch. 4; *Wheelden* v. *Wilson,* 44 Me. 11; *Kimball* v. *Thompson,* 4 Cush. 441, 50 Am. Dec. 799; *De Wolfe* v. *Sprague Mfg. Co.* 49 Conn. 382; *Bank* v. *Inloes,* 7 Md. 380; *Jones* v. *Syer,* 52 Md. 211; *Dunham* v. *Waterman,* 17 N. Y. 9, 72 Am. Dec. 406; *Gardner* v. *Bank,* 95 Ill. 298; *Same* v. *Same,* 13 R. I. 155; *Bank* v. *Knowles,* 67 Wis. 373; *Blennerhasset* v. *Sherman,* 105 U. S. 100; *Thompson* v. *Huron Lumber Co.* 4 Wash. 600.

The lumber company was insolvent in law and fact at the time these instruments were executed:   Wait on Insolvent Corporations, § 28; *Parish* v. *Murphree,* 13 How. 100; *Toof* v. *Martin,* 13 Wall. 40; *Thompson* v. *Thompson,* 4 Cush. 127; *Lee* v. *Kilburn,* 3 Gray, 594; *Hazleton* v. *Allen,* 3 Allen, 114; *Vennard* v. *McConnell,* 11 Allen, 555; *Herrick* v. *Borst,* 4 Hill, 650; *Webb* v. *Sachs,* 4 Saw. 158; *Churchill* v. *Wells,* 7 Cold. 364; *Clay* v. *Towle,* 78 Me. 86.

That insolvent corporations cannot make preferences to creditors is a doctrine declared and contended for by all the text writers:   2 Morawetz, Corporations, § 803;

Taylor on Private Corporations, §§ 34, 654–68, 759; Wait on Insolvent Corporations, §§ 662, 654; 2 Story's Equity Jurisprudence, § 1252; 2 Pomeroy's Equity Jurisprudence, 1046. While the weight of the adjudicated cases is against the proposition, there is strong judicial authority in its support: *Tank Line Co.* v. *Varnish Co.* 45 Fed. 7; *White Mfg. Co.* v. *Pettes Imp. Co.* 30 Fed. 864; *B. & O. Tel. Co.* v. *Interstate Tel. Co.* 54 Fed. 50; *Robins* v. *Embry*, 1 S. & M. Ch. 207; *Rouse* v. *Bank*, 46 Ohio St. 493; *Thompson* v. *Huron Lumber Co.* 4 Wash. 600; *Bank* v. *Knowles*, 67 Wis. 373; *Haywood* v. *Lumber Co.* 64 Wis. 639; *Kankakee Mill Co.* v. *Kampe*, 38 Mo. App. 229; *Marr* v. *Bank*, 4 Cold. 471; *Smith* v. *Putnam*, 61 N. H. 632.

While this court has never passed immediately upon the point, the doctrine has been incidentally recognized in *Powell* v. *W. V. R. R. Co.* 15 Or. 393; *Schetter* v. *Southern Oregon Co.* 19 *Id.* 192. And necessarily results from the opinion in *Hutchinson* v. *Bidwell*, 24 Or. 219.

*Mr. Geo. H. Durham*, for Commercial National Bank; *Mr. Edward B. Watson*, for other Respondents.

Opinion by Mr. Justice Bean.

The contention for the plaintiff is that the mortgages show on their face that they were made for the benefit of the mortgagor, and were designed to be used as a shield between the corporation and its unsecured creditors, while it prosecuted its business for an indefinite time. It is undoubtedly true that where a mortgage is designed and made for the benefit of the mortgagor, and to enable him to continue in business by placing his property beyond the reach of legal process, it is void as to creditors, although it may be intended in good faith for the ultimate benefit of all the creditors by preventing a sacrifice of the property; and if such is the legal effect of the instrument,

the courts will so declare as a matter of law, for, as was said by the Vice Chancellor in *Van Nest* v. *Yoe*, 1 Sand. Ch. 9, " The law provides that the debtor shall fulfil his obligations, and on his default it gives to the creditor his 'lawful suit' for the recovery of his demand, and the sale of the property of the debtor for its payment. This is a strict right. And the debtor who. * * * places his property beyond the reach of the process of the law,· whatever may be the pretense under which he cloaks the act, in the language of the statute of frauds, 'hinders' and 'delays,' and ultimately 'defrauds,' his creditors. It is no answer to this argument to say that the debtor provides an ample fund for the payment of the debt, and that the creditor is ultimately to be paid in full. The law gives to the creditor the right to determine whether his debtor shall have further indulgence, or whether he will pursue his remedy for the collection of the debt. The deferring of payment is generally an injury to the creditor; and he may be overwhelmed with bankruptcy for the want of the fund which is locked up by the voluntary assignment of his debtor. It is a mockery to such a creditor to say that the assignment is made for the benefit of creditors."

2. Particular stress is laid upon the fact that provision is made by all these instruments to secure the bank for advances or overdrafts which it might thereafter make or allow the corporation in the conduct of its business. It seems to us, however, that there is nothing in the terms of the mortgages in question, which, if carried into effect according to a reasonable construction, would of necessity in any way unjustly hinder or delay creditors. From the provision as to future advances it may be inferred that it was the intention that the mortgagor should be permitted to continue in business for its own benefit, yet there is no stipulation in express terms to that effect, or, in fact, that it shall be allowed to continue in business at

all, or that the bank shall make any advances, but it is rather a provision that if the bank should see proper to make future advances, such advances should be secured by the mortgages. In this view such provision does not render the mortgages void, and we are bound to construe the terms of the instrument in harmony with honesty and fair dealing, if it can be done without doing violence to the language. The company was at the time in active business, and had an undoubted right to provide by mortgage of its property for future advances: *Hendrix* v. *Gore*, 8 Or. 407; *Nicklin* v. *Betts Spring Co.* 11 Or. 406, 50 Am. Rep. 477, 5 Pac. Rep. 511. And such a provision does not necessarily render the mortgage fraudulent, although it may subsequently turn out that the mortgagor was in fact unable to pay all his debts at the time the mortgage was given: *U. S.* v. *Hooe*, 3 Cranch, 73. Every mortgage necessarily tends to hinder or delay creditors other than the mortgagee, but a delay necessarily resulting from a fair and honest exercise of the right to dominion over one's own property, and to pledge or otherwise dispose of it, is neither an unjust nor unlawful interference with the rights of others, and is not within the terms of the statute making void conveyances intended to hinder or delay creditors.

3. Nor are we able to concur with the contention of counsel that the evidence shows the mortgages to be fraudulent in fact. There are some circumstances, it is true, which, unexplained, on their face tend to support this contention; such as, for instance, that the corporation was financially embarrassed at the time the mortgages were given; that the debts were long overdue, and no time is provided in the mortgages for payment; the inference that it was contemplated the company should continue in business at the pleasure of the bank, which is sought to be drawn from the stipulation for future

advances, and the restriction imposed upon the trustee to foreclose only when requested by the bank; that the only possession in fact taken by the trustee was by appointing the agents and officers of the corporation agents for him, and allowing them to sell and dispose of the property, turning into the bank the proceeds, which were credited on overdrafts paid by the bank subsequent to the execution of the mortgages; that no special effort was made by the bank to collect the accounts and bills receivable assigned to it except by appointing and authorizing the officers of the company to do so; that the length of time the bank was to suffer the mortgages to remain unforeclosed was to depend on circumstances, as testified to by its cashier. While these circumstances point with more or less directness to the conclusion that the mortgages were intended to hinder and delay creditors, yet they are all explainable consistently with honesty and good faith. And when it is remembered that the debt for which the security was given was a *bona fide* debt long overdue, and about which the bank had manifested much solicitude; and it was only after repeated and urgent solicitation, and when the company found itself unable to obtain further accommodation at the bank, that it concluded to give the mortgages; that these were promptly filed and recorded, and there was no attempt at concealment, but the entire transaction was open and above board, it seems to us that upon the whole case it cannot be said that the mortgages were not executed in good faith to secure the debt. The mortgages are *prima facie* valid, and to overcome this presumption it is not enough that some of the circumstances attending the transaction may tend to show fraud. There is an essential difference between the material fact of fraud and the circumstances tending to prove it. The burden of proof is on the plaintiff, and the mortgages must be deemed valid until he overcomes the

presumption by a clear preponderance of the evidence. The findings of the trial court who heard the witnesses, and was therefore in a better position to judge of the effect and value of their testimony than we are, were in favor of the defendant, and, while the case is not free from doubt we are unprepared to say that such findings are unwarranted by the testimony.

4. It is claimed there is some evidence which tends to show that one object of the company in giving the mortgages was to hinder and delay creditors by preventing a sacrifice of its property. But it cannot, we think, be successfully contended that the bank participated in the fraudulent purposes of the company, if any such existed, or had any other motive for taking the mortgages than a desire in good faith to secure its claim; and although it may have known the mortgages would operate to hinder and delay other creditors, and even if it knew the company intended them to have that effect, the transaction will not be void unless the bank participated in the fraudulent purpose of the company: 2 Cobbey on Chat. Mortg. § 771; *Dudley* v. *Danforth*, 61 N. Y. 626; *First Nat. Bank* v. *Lowrey*, 36 Neb. 290, 54 N. W. 571; *Alberger* v. *White*, 117 Mo. 347, 23 S. W. 92; *Shelley* v. *Boothe*, 73 Mo. 74, 39 Am. Rep. 481; *Pollock* v. *Meyer*, 96 Ala. 172, 11 South. 385; *Ford* v. *Williams*, 3 B. Mon. 550; *Worland* v. *Kimberlin*, 6 B. Mon. 608, 48 Am. Dec. 785; *Covanhovan* v. *Hart*, 21 Pa. St. 495, 60 Am. Dec. 57; *Hodges* v. *Coleman*, 76 Ala. 103; *Olmstead* v. *Mattison*, 45 Mich. 617, 8 N. W. 555. If a debtor converts his property by sale into money because it is more easily secreted, intending to put it and its proceeds out of reach of his creditors, he of course commits a gross fraud, and one who purchases of him with knowledge of his object in making the sale obtains no title as against creditors, though he may have paid the full price   But the rule is differ-

ent when the property is taken in payment of, or as security for, a *bona fide* debt, which only amounts to giving one creditor preference over another. In the absence of a statute a debtor in failing circumstances may prefer one creditor to another by giving him adequate security for his debt to the exclusion of others. The right to give such preference necessarily implies the right of the creditor to accept it, and if he accepts the preference in good faith, without fraudulent purpose on his part, it will not be void on account of the motive which may have prompted the debtor to make it. One creditor is not bound to take care of another. He has a right, in good faith, to demand and receive the property of his debtor as security for his debts, though he may know that he will thereby withdraw the means of satisfying other creditors, and though he may know that the debtor thereby intends to hinder, delay, or defraud such other creditors. It is simply a race of diligence in which the law rewards the successful party provided he acts in good faith.

5. It is urged, also, that at the time the mortgages were given the corporation was insolvent, and that the bank knew, or suspected, that it had not sufficient means to pay all its creditors in full, and demanded security for its debt, and thereby obtained an undue advantage over other creditors. If these conditions actually existed, the validity of the security so taken might well be questioned; but we do not think there was such a condition in the financial affairs of this company as would justify the conclusion that a state of insolvency existed which would preclude the bank from demanding and receiving the security which was given for its debt. It is true that at this time the company was largely in debt, and may perhaps have been insolvent within the meaning of that term as used in the bankrupt or insolvent laws. It was, however, a "going concern," engaged in the conduct of

the business for which it was incorporated, and not known or believed by its officers or agents to be insolvent, and with assets exceeding its liabilities by at least twenty thousand dollars, according to the least value placed thereon as appears from the testimony. Such a corporation can hardly be said to be insolvent within the rule sought to be invoked in this case. It is difficult, if not impossible, to lay down a definition of insolvency applicable to all cases. It must necessarily be construed with reference to the facts of each particular case. In its general and popular meaning it is used to denote the insufficiency of the entire property of an individual to pay his debts, but under the bankrupt and insolvency proceedings, which were designed for the benefit of the debtor, it is used in a more restricted sense, and denotes the inability of a party to pay his debts as they become due in the ordinary course of business: *Toof* v. *Martin,* 13 Wall. 40; *Webb* v. *Sachs,* 4 Sawy. 158. And to this effect are the authorities cited by plaintiff. We are, however, not disposed to apply the rigor of the rule that obtains in bankruptcy proceedings to a case of this character. It often happens that corporations with assets more than sufficient to pay all their debts are unable to meet an outstanding obligation as it matures, and, without undertaking to lay down any definite rule by which the question of the solvency or insolvency of a corporation may be determined, it is sufficient for the purposes of this case to say, that so long as a corporation is a "going concern," engaged in the conduct of the business for which it was organized, and not known or believed to be insolvent by its officers and managers, with assets exceeding its liabilities to the extent shown by the testimony in this case, it is not in such a state of insolvency as will preclude its executing a mortgage on its property, in good faith, to secure a debt of the corporation, even though the debt may be one for which the directors are security.

As the corporation was not insolvent, it is unnecessary to examine or decide the question as to the right of an insolvent corporation to prefer creditors, or of a director of such a corporation to secure the debts thereof for which he is personally liable. It follows that the decree of the court below must be affirmed.

Affirmed.

On Rehearing
[ 35 Pac. 854.]

Opinion by Mr. Justice Bean.

The opinion in this case is challenged by a petition for rehearing because it is held therein that if the mortgages were taken by the mortgagee in good faith to secure an honest debt, the motive or purpose of the debtor in giving them was immaterial. This question has been reëxamined both on this petition and in *The Durand Organ & Piano Co.* v. *Bowman,* just decided, and the opinion of the chief justice in the latter case renders the further discussion of that subject unnecessary.

It is also challenged because it is substantially held that a corporation engaged in the conduct of the business for which it was organized, although embarrassed and unable to pay its debts at maturity, does not necessarily become insolvent within the meaning of the authorities holding that an insolvent corporation cannot prefer one creditor to another, and counsel say they " are at an utter loss to imagine why the same rule should not be applied in such cases as in bankruptcy proceedings." The reason is manifest. A corporation conducting a business of the magnitude and character of this depends for its very life upon credit. It could not run a single day without it. It must have credit in bank and with those with whom it deals, and to say that it is insolvent within the meaning of the rule invoked because it is unable, by reason of a

dull market or other cause, to meet its obligations in the
ordinary course of business at maturity, or because suffi-
cient could not be realized from its property at forced sale
to pay its debts, would be to deny to such a corporation
the *jus disponendi* of its property, and the right to con-
tinue in business. In *Corey* v. *Wadsworth*, 11 South. 350,
23 L. R. A. 618, the court, in defining at what stage of a
corporation's affairs it must be pronounced insolvent so
as to bring it within the rule prohibiting preferences, says:
"It is not enough that its assets are insufficient to meet
all its liabilities, if it be still prosecuting its line of busi-
ness with the prospect and expectation of continuing to
do so; in other words, if it be in good faith, what is some-
times called a 'going' business or establishment. Many
successful corporate enterprises, it is believed, have passed
through crises, when their property and effects, if brought
to present sale, would not have discharged all their liabil-
ities in full."

Mr. Thompson, who is an able advocate of the "trust-
fund" doctrine, says upon this subject: "The meaning
of the doctrine is not that such assets (of a corporation)
are in any strict or close sense a trust fund for the creditors
of a corporation while it is a going concern. It does not,
in any sense, disable the directors from dealing with the
assets of the corporation, in the ordinary course of its busi-
ness, as fully as an individual might under the same
circumstances deal with his assets. But its meaning is
that, when the line of insolvency is reached or approached,
so that the directors can no longer deal with the assets
of the corporation in the ordinary course of business, but
must deal with them in the contemplation of insolvency
and suspension, then the assets become, in the hands of
the directors, a trust fund for the creditors of the corpora-
tion, and the directors become the trustees of that fund."
And, illustrating the doctrine, he puts the case of a bank,

which, after resisting a run, made by its depositors, by payment of their demands over its counters, is finally compelled to suspend, and says: "So long as it did that, it was acting in the regular course of its business; and, in the absence of a statutory prohibition, under all legal conceptions, the preferences obtained by those depositors were honest and lawful, and were made in good faith because they were made when the directors believed that they would be able to pay all in full." But if, after closing its doors, the directors resolve to single out certain of its depositors and pay them in full, or divide among them what remains, such a transaction would come, he says, within the doctrine prohibiting an insolvent corporation from preferring one creditor to another: 27 Am. Law Rev. 846. It seem to us that the doctrine for which plaintiff contends can only apply, if at all, when that point in the affairs of the corporation is reached where its managers find themselves obliged to deal with its assets in view of a suspension by reason of its insolvency, but not while the corporation is in good faith engaged in the business for which it was organized, although in fact it may be insolvent. This principle is borne out by *Lyons-Thomas Hardware Co.* v. *Perry Stove Mfg. Co.* 24 S. W. R. 16, *Duncomb* v. *N. Y. H. & N. R. R. Co.* 88 N. Y. 1, and *Currie* v *Bowman.*

The decision of the lower court is affirmed.

AFFIRMED.