## WALTER L. TAYLOR *vs.* CARRIE M. GORMAN.

*Opening of Judgment—Imposition of Conditions—Requirement of Bond.*

In the absence of an appeal by plaintiff, the action of the lower court in striking out a judgment in his favor cannot be reviewed by the Court of Appeals.                                    p. 214

As a condition of the striking out of a judgment by confession against defendant as indorser on various notes, entered under authority in such notes to confess judgment, *held* that the defendant should be required to enter his appearance and to pay into court the amount of one of such notes, which was given in renewal of a note previously indorsed by him, as to which he did not claim to have any defense, and that the lien of the judgment, to the extent of the balance thereof, should be preserved and retained, to secure the plaintiff from loss should she recover at the trial of the case on the merits.           p. 217

The court having determined that the defendant had a meritorious defense, which he should be given an opportunity to present, a requirement, as a condition of granting the motion to open the judgment, that the defendant give bond in an amount approximately equal to that of the judgment, *held,* under the circumstances, to be improper, as possibly resulting in a practical denial of the motion.                            p. 217

That a judgment by confession is opened for the purpose of a trial of the case on its merits does not necessarily involve the vacation of the judgment, which may continue as valid and subsisting, and not to be vacated unless and until it is finally determined that plaintiff is not entitled thereto.      p. 218

*Decided April 10th, 1924.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by Carrie M. Gorman against Walter L. Taylor, in which a judgment by confession was entered in favor of plaintiff. From orders granting his motion to strike out the judgment, but on certain terms named, defendant appeals. Reversed.

The cause was argued, together with that next following, before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Herbert B. Stimpson* and *Walter L. Taylor, Jr.,* for the appellant.

*Frank Gosnell,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 20th of June, 1922, a judgment by confession was entered in the Superior Court of Baltimore City in favor of Carrie M. Gorman against Walter L. Taylor for $16,-166.28, with interest from date and cost of suit, on the following promissory notes of the Flax Products Corporation in favor of the plaintiff and endorsed by Herbert B. Stimpson and the said Walter L. Taylor: one dated December 10th, 1920, for $6,250, payable on demand with interest; one dated December 21st, 1920, for $2,200, payable sixty days after date with interest; one dated January 28th, 1921, for $1,813.34, payable on demand with interest, and one dated

December 29th, 1920, for $1,600, payable sixty days after date with interest. Each of said notes contained an authority to any attorney to appear and confess judgment for the amount of the note, costs of suit "and attorney's commission of 25 per cent. for collection," and each bore the following endorsement: "It is hereby agreed that all the terms and conditions regarding the power of attorney and confession of judgment appearing on the face of this note shall apply to me as endorser in any suit on said note against me, and I also waive all necessity or notice of protest if note be not paid at maturity. Herbert B. Stimpson (Seal), Walter L. Taylor (Seal)."

On March 22nd, 1923, the defendant filed a motion to strike out said judgment for the following reasons: 1. That he signed the notes upon which the judgment was obtained upon the express condition that Allen B. Gorman and George M. Zingsheim would also sign them as endorsers; that Allen B. Gorman was authorized by the plaintiff to act as her agent in procuring his endorsement, and that the notes were delivered to him as the agent of the plaintiff "in escrow upon the condition aforesaid"; that the said Allen B. Gorman and George M. Zingsheim did not sign the notes as endorsers, and that Allen B. Gorman delivered them to the plaintiff in violation of said condition, "and that the plaintiff, with due notice through him as her agent, accepted them."

2. That before the notes were signed by the defendant said Allen B. Gorman, agent for the plaintiff, advised him that the Flax Products Corporation "would receive immediately from other sources $3,500" to be used by it in liquidation of certain indebtedness, and that he signed the notes upon condition "that $3,500 be received" by said corporation for the purpose mentioned, and that the notes were given to the plaintiff by said Gorman before the $3,500 was received, and that as to the defendant the delivery of said notes was unauthorized.

3. That at the time the notes were signed by him it was understood and agreed that the blank form printed in the

notes "should not be filled in to authorize the collection of attorneys' fees or commissions in any amount whatever," but that after he signed the notes, and without his consent a provision was inserted allowing the payee's attorney a collection fee of 25 per cent., "of all of which the plaintiff, through her duly authorized agent, Allen B. Gorman, had due notice."

4. "That as a reason for the delay in filing this motion the defendant says that he resides in West Virginia and was advised that the defenses set forth herein could be presented when suit on said judgment was instituted against him in West Virginia; that a suit at law was so instituted and was not decided until January 26th, 1923, when the District Court for Southern District of West Virginia held therein that the merits of the case upon which the judgment of this Court was based could not be raised in that Court.

In her answer to the motion the plaintiff alleged that the statement of the defendant that he endorsed the notes upon condition that said Gorman and Zingsheim would also become endorsers was not true, and it was not until some time after her demand for payment that she first heard that the defendant intended to set up such a claim; that when she accepted the notes she had no reason to suppose that the endorsement of the defendant was not unconditional; that Allen B. Gorman was not her agent in procuring said notes, and they were not delivered to him as her agent; that in all transactions relating to the loans made by her for which the notes were given, Allen B. Gorman, who was the vice-president of the Flax Products Corporation, was acting solely as the officer and agent, and in the interest of said corporation, and was never authorized to act as her agent; that the notes sued on bearing the endorsement of the defendant and Herbert B. Stimpson were given to her as an inducement for an extension of the time of the loans made to the corporation, and that the defendant, knowing that she granted such extension in consideration of said endorsements, left the plaintiff under the impression that his endorsement was valid until after

she demanded payment of the notes. In answer to the second paragraph of the motion, she further denied that Allen B. Gorman acted as her agent in the transaction mentioned, and averred that she had no knowledge of his representing to the defendant that the corporation would receive $3,500, and that if such statement was made by him she was in no way responsible therefor. Answering the fourth paragraph of the motion, she alleged that promptly after the entry of said judgment a transcript of the record was sent to attorneys in West Virginia with instructions to enforce payment as soon as possible; that said attorneys promptly notified the defendant that they had received the judgment and of the instructions given them, and that in less than thirty days from the date of the judgment the defendant replied to said attorneys that he had already instituted proceedings in Baltimore to have the judgment annulled, and that the defendant, therefore, knew that if he had any grounds upon which to attack the judgment, such attack would have to be made promptly in the court in which the judgment was entered. Further answering said motion, the plaintiff alleged that, at the time the notes were delivered to her, Taylor and Stimpson were extensively interested in and were officers of said corporation, which controlled a patent which they hoped to dispose of in a short time and in such manner as would yield them a very large profit; that in February, 1921, she demanded payment of her loans, and that on March 1st, 1921, Stimpson, Mr. Slingluff, her attorney, and Mr. Goldsmith, attorney for Charlotte J. Gorman, held a conference for the purpose of ascertaining if payment of her notes and the note of Charlotte J. Gorman could not be secured without litigation; that at said conference Stimpson asked that she and Charlotte J. Gorman refrain from litigation, as he was confident that the corporation would be able to pay their notes in full within a short time, and stated that if suits were instituted his and Taylor's efforts to dispose of the patent would be frustrated; that at said conference Stimpson also stated that if suits were instituted against him or Taylor

they would make the defense stated in the defendant's motion; that prior to said statement the plaintiff had received no intimation of such a contention by either Stimpson or Taylor; that at another conference of the same parties, on March 2nd, Stimpson was informed that the threat to set up such defenses made it necessary, in the judgment of said attorneys, to institute suit against the endorsers without further delay, so that all doubts as to their liability could be promptly "set at rest," and that Stimpson then stated that Taylor would be in Baltimore soon, and that he would arrange a conference with said attorneys; that on the 15th of March, 1921, a conference was held at which said attorneys, Stimpson, Taylor, Allen B. Gorman and E. Arthur Gorman were present, and that after an extensive discussion the attorneys proposed on behalf of the plaintiff and Charlotte J. Gorman that they would agree not to institute suit against either of said endorsers within one year from that date if, in consideration thereof, said endorsers would waive every possible defense they might have and hold themselves "unqualifiedly liable as endorsers on said notes"; that Stimpson and Taylor agreed to said proposal provided Allen B. Gorman would become co-endorser with them, and that Allen B. Gorman agreed to do so; that Stimpson and Taylor then said that George M. Zingsheim was interested with them in said corporation and should also be an endorser, and that they would undertake to secure his endorsement of the notes; that it was agreed that said attorneys should prepare such papers as they thought necessary to constitute the evidence of said agreement; that as the notes held by the plaintiff and Charlotte J. Gorman had been dishonored and protested, new notes and an agreement were prepared by said attorneys and sent to Stimpson for his signature, and to be sent by him to Taylor; that thereafter Stimpson repeatedly stated to said attorneys that he had forwarded said papers to Taylor urging him to sign and return them to him, and that he had also forwarded to Taylor letters from said attorneys protesting against delay in the execution of said papers, but that Tay-

lor, without giving any reason therefor, had not complied
with his request; that at no time after said conference did
either Stimpson or Taylor suggest that the papers were not
prepared in accordance with their said agreement, or that
they would not sign them, but by the inaction of Taylor and
the repeated promises of Stimpson they secured more than
the promised period of delay of litigation; that some time
after the 15th of March, 1922, demand was made upon
Stimpson, secretary of said corporation, for payment of said
notes, and after numerous conferences with him a letter was
written by one of said attorneys, on behalf of the plaintiff
and Charlotte J. Gorman, to Taylor on April 15th, 1922,
in which, after referring to the agreement of March 15th,
1921, and the repeated efforts to secure execution of said
papers, he was advised that as the time had expired, suit
would be delayed only a few days if payment was not made;
that Taylor never replied to said letter, and suit was not
instituted in the Superior Court of Baltimore City until
more than two months after the date of said letter.

The evidence produced by the defendant and the plaintiff
at the hearing of the motion is embraced in a bill of excep-
tions and is set out in the record. On the 27th of July, 1923,
the court below passed an order that the motion to strike out
the judgment be granted, "provided the defendant within
forty-five days from the 22nd of June, 1923 (being the day
on which the decision of the court on said motion was an-
nounced) filed in this case his bond with surety and condi-
tions satisfactory to the plaintiff's attorney in the penal sum
of $14,500.00 conditioned to pay any judgment that may
hereafter be recovered on the notes filed herein or offered in
evidence." On the 15th of December, 1923, the court be-
low passed another order, which recited that objections had
been made to the order of July 27th because it required the
surety and conditions of the bond to be satisfactory to plain-
tiff's counsel, and then proceeded as follows: "It is ordered
this 15th day of December, 1923, after two informal hear-
ings at which counsel for all parties were present, that the

order herein of July 27th, 1923, be and is hereby modified
so that in lieu of the bond referred to in that order, if the
judgment debtor file in this court on or before the 28th day
of December, 1923, a bond in the penalty of fifteen thousand
two hundred and fifty dollars, if corporate surety be given,
or eighteen thousand three hundred dollars if individual
surety or sureties be given, conditioned to satisfy any final
judgment herein, the surety or sureties to be approved either
by law, by the court or by the clerk; upon the filing of said
bond within the time aforesaid the motion shall be granted."
From each of these orders the defendant has appealed.

As no appeal was taken by the plaintiff, we cannot review
the action of the court below in striking out the judgment
upon the terms provided, and the only question to be deter-
mined is whether the conditions imposed by the orders re-
ferred to were reasonable and proper. 2 *Poe, Pl. & Pr.,* sec.
324; *Benson* v. *Atwood,* 13 Md. 57; *Stockbridge* v. *Frank-
lin Bank,* 86 Md. 200.

In the case of *Heaps* v. *Hoopes,* 68 Md. 383, where the
defendant was not summoned, the appearance for him was
not authorized or intended, and the motion to strike out
the judgment was filed after the lapse of the term, Judge
Miller, speaking for the Court, said: "True, there was no
fault on the part of the plaintiffs, but the appellant was
equally innocent, and it is not just that he should, by reason
of such a mistake as this, be made to pay a debt for which
he avers he is not responsible. He is entitled to have the
question of his liability tried and determined. It was said
in the argument that he has since confessed judgments in
favor of other parties, so that the plaintiffs will be deprived
of the benefit of their judgment if they should succeed in
maintaining his liability for their claim, but of this we have
no proof in the record. The court, however, in striking out
a judgment, exercise a *quasi* equitable power, and if upon
the remand of the case it shall be made to appear that the
appellant has confessed judgment in favor of other creditors
of this firm, or that such other creditors have in the mean-

time succeeded in their suits in making him responsible as a partner for their claims, it will be competent for the court, and a proper exercise of its power in such cases, to prescribe as a condition upon which this judgment shall be stricken out, that the appellant shall pay into court a sum of money sufficient to meet it in case the plaintiffs shall succeed in establishing a like responsibility for their claim. This will be doing but simple justice to the plaintiffs, who by no fault on their part, have been deprived of an earlier trial of the real question in dispute, and of their chance of thus obtaining a prior lien." Upon a like equitable principle, this Court, in *Forwood* v. *Magness,* 143 Md. 1, where the judgment had been entered on a note containing a power to confess judgment and the makers had deposited in the bank at which the note was made payable the amount due, held that the defendants should be required to pay into court for the use of the plaintiff the sum admitted to be due, as a condition upon which the judgment should be stricken out. In *Tyrrell* v. *Hilton,* 92 Md. 176, Judge Pearce said: "But in such cases the rule seems to have been established that the lien will be preserved to secure the plaintiff from loss, should he afterwards recover at a trial on the merits. *Freeman on Judgments,* sec. 499; *Page* v. *Wallace,* 87 Ill. 84; *Grazebrook* v. *McCreedie,* 9 Wendell, 437; *Ellsworth* v. *Campbell,* 31 Barb. 137." After quoting from *Ellsworth* v. *Campbell, supra,* and referring to *Heaps* v. *Hoopes, supra,* which he said closely resembled the case he was considering, Judge Pearce said further: "In the case we are now considering, a subsequent mortgage for $3,000.00 was taken by Robert Archer, with knowledge of this judgment, and in reliance upon its invalidity, and if this judgment is stricken out without any conditions, gross injustice might be done the plaintiff, who would thus be delayed in obtaining his lien more than five years after it was supposed to have been obtained. The requirement to pay into court so large a sum of money ($1,735.39), would be a far more onerous condition than the retention of the lien, which we think more just and equit-

able." After referring to the case of *Coulbourn* v. *Fleming*, 78 Md. 210, where a judgment by default against a nonresident was stricken out upon condition that he would enter his appearance that the case might proceed to trial in the regular way, Judge Pearce then said: "If, therefore, we should strike out the judgment as void, we should do so only upon terms which would preserve the cause of action as well as the lien of the plaintiff." It is said in 23 *Cyc.* 972: "It is within the authority of the court, on opening a judgment, to impose the condition that the defendant should give a bond or undertaking to pay any judgment that plaintiff may eventually recover. But this is regarded as a severe condition, and will be held as an abuse of discretion unless the facts of the case and the situation of the parties fully justify it." The provision in section 315A of the Baltimore City Charter (1915), authorizing the court in striking out a judgment to require a bond for the payment of the judgment finally recovered, applies only to cases in which a judgment by default has been entered under the Speedy Judgment Act applicable to Baltimore City, and in the case of *Wisner* v. *Reeside*, 139 Md. 221, where the judgment was stricken out by the court below upon condition that the defendant should file a plea within ten days and also a bond conditioned for the payment of any judgment that might be rendered against him, the appeal was taken by the plaintiff, and therefore no question in regard to the condition imposed by the order of the lower court was raised by the appeal.

In the case of *International Harvester Co.* v. *Neuhauser*, 128 Md. 173, Chief Judge Boyd said: "While we have recognized the right of the holder of a 'judgment note' to enter up a judgment under the authority therein contained, yet when a court is called upon to exercise what Mr. Poe calls its '*quasi* equitable powers,' in determining a motion to strike out the judgment, it should be very careful to see that no improper advantage has been taken of the maker of such note in entering the judgment. How far the appellee can sustain his claim is not for us to now determine, but we are

of the opinion that under the circumstances the lower court was right in striking out the judgment and giving him an opportunity to have his claim properly presented," and in *Wisner* v. *Reeside, supra,* Judge Urner said: "The conditions presented fully justified the order which we are now asked to review. There was a substantial basis for the controversy in which the parties were engaged when the authority for entering a confessed judgment was exercised, and the defense thus precluded was not only meritorious but had been definitely asserted. The entry of the judgment foreclosed the judicial inquiry and decision to which both of the parties were entitled, and which neither of them could properly deny to the other under the circumstances."

In the present case, the court below determined on the evidence before it that the defendant had a meritorious defense, and that he should be given an opportunity to present it, and, as we have said, its decision to that effect is not open to review on this appeal. Having reached that conclusion, the court below, in the exercise of its *quasi* equitable power, should have adopted a course, which, while protecting the plaintiff, would have afforded the defendant a reasonable opportunity to make his defense. The evidence does not show what property the defendant possessed, or his ability to procure a bond in so large an amount. Under such circumstances the condition imposed by the orders referred to might result in a practical denial of his motion. The evidence does show that the defendant is a resident of West Virginia, and in his testimony he admitted that he had endorsed a note to the plaintiff, dated December 20th, 1920, for $2,200, of which the note for a like amount included in the judgment was a renewal. It is not claimed that the defendant had any defense to the original note for $2,200, and the uncontradicted evidence shows that no payments had been made on any of the notes referred to. We think that, in equity and justice to both plaintiff and defendant, the defendant should be required, as a condition upon which the judgment shall be stricken out, to enter an appearance in the case, and to pay into the court below for the use of the plaintiff the

amount due on the original note for $2,200, and that the lien of said judgment, to the extent of the balance thereof, should be preserved and retained, to secure the plaintiff from loss, should she recover at the trial of the case.

The orders appealed from will, therefore, be reversed and cause remanded in order that an order may be passed in accordance with the views we have expressed.

> *Orders reversed, with costs, and case remanded in order that an order may be passed in accordance with the opinion of this Court.*

*Memorandum by the Court.*

Petitions filed in this case since the above opinion was filed make it seem desirable to add, that it is not the meaning and intention of the Court in the above opinion that the judgment shall now be vacated, but on the contrary that it shall be merely opened for the purpose of the trial of the case, and that in directing that the lien of the judgment shall be preserved and retained to secure the plaintiff from loss should she recover at the trial of the case, the meaning and intention is that the judgment now of record shall meanwhile continue as a valid and subsisting judgment for the amount still unpaid, unaffected by the motion and by the trial of the case, and not to be vacated, unless and until it shall be finally determined by trial that the plaintiff is not entitled to such judgment.