# HENRY STOCKBRIDGE, JR. and AMOS F. MUS-SELMAN, Executors, etc., *vs.* THE FRANKLIN BANK OF BALTIMORE.

*Assignment of Part of Debtor's Property for the Benefit of Creditors—Preferences—Fraud—Appeal—Attachment—Evidence.*

An assignment by a debtor of part of his property in trust for the payment of certain designated creditors, which does not exact releases, is not fraudulent and void merely because it does not convey all of grantor's property.

If such assignment by a debtor, the effect of which is to give preference to certain creditors, be assailed on the ground of fraud, the burden of proof is on the party impeaching the same.

An exception to the admissibility of evidence taken at the trial by a party who does not appeal from the judgment is not properly before this Court upon an appeal by the other party.

When an attachment is issued and the garnishee pleads *nulla bona*, he may offer in evidence an assignment of defendant's property formerly in his hands executed by the defendant to a third party before the attachment was laid, so as to show that he had no property belonging to the defendant in his possession at any time after the attachment was laid.

Appeal from the Court of Common Pleas (Harlan, C. J.) At the trial the Court granted a prayer offered by the plaintiff instructing the jury that the assignment from Harrison Hopper to Henry W. Fox was fraudulent in law and invalid against the plaintiff and could not be relied on by the garnishees to prevent a verdict against them in favor of the plaintiff. And the Court refused to grant a prayer offered by the garnishees to the effect that there was no evidence legally sufficient to show that the assignment from Hopper to Fox was fraudulent and that since the same was executed long before the attachment in this case, the verdict should be for the garnishees.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page and Boyd, JJ.

*John Prentiss Poe* (with whom was *Frederick  C.  Cook* on the brief ), for the appellant.

The plaintiff corporation not only did not prove that there were assets in the hands of the appellants liable to attachment, but, on the contrary, proved there were no such assets in hand.    They clearly showed that Harrison  Hopper had assigned his distributive share more than eleven months before the service of the attachment to  Henry W. Fox, by the offer of the *roth item of the second administration account* of the executors of Isaac Albertson, who  paid  over, under an assignment to Mr.  Fox, so large a  sum as  $5,865, and who  only  retained  the  $1,350, and  $150, respectively, to protect themselves from possibility of loss in this case.    The plaintiff ought  to have shown in  chief either that  this sum so  paid  satisfied  the  assignment  to  Mr.  Fox, or that the same was only partial ; and if not that,  should  have  nulli- fied  the  legal  efficacy  of the  assignment,  by construction of law or some matter impeaching the same, *dehors* the assign- ment  itself.    Having  done  neither,  the  Court  below, it  is urged,  erred  in  refusing  the  appellant's  prayer offered at the end of the plaintiff's case in chief.    *Nailor* v.  *Bowie*, 3  Md. 258 ;  *Sprigg* v.  *Moale*, 28  Md.  509 ;  *Act*  1894, ch.  516.

When the evidence had thus far progressed and the  Court had refused to  rule that there was  no  legally sufficient evi- dence to  show that  there  were  any  funds  liable to attach- ment in the  hands of the garnishees at the time of  the  ser- vice of the writ of attachment, the appellants offered in evi- dence a duly certified copy of the  assignment to  Mr.  Fox, and also proved that the executors were notified of the same and had acted upon it by paying out  large sums of  money to Mr. Fox, and then rested.    The plaintiff corporation then produced Mr. Fox and offered to impeach said  assignment and his rights thereunder as assignee by his own  evidence, to which the garnishees in this case objected, but the Court directed that the evidence of Mr.  Fox for that  purpose should be admitted, which action of the Court in so  doing forms the second bill of exceptions of the appellants.    This

conduct of the Court was practically compelling the appellants to become sureties for another attachment case with which they had no concern.   Mr. Fox had been served with this attachment, " was a reputable member of the bar and in good credit," and was fully able to respond to any judgments that might be obtained against him as garnishee when his case came on to be tried.

This distributive share of legacy was assignable (Code, Art. 8, sec. 1), and has been assigned, the assignment recorded, and the executors had ceased to be liable to the debtor, and had incurred new obligations to the assignees, and were, therefore, not responsible to answer the plaintiff's demand.   *Hodge and McLane on Attachments*, sec. 48, page 130, and cases cited.

The only possible theory on which this evidence tendered by Mr. Fox could be admissible, would be upon the ground of invalidating the assignment *for fraud.*   But it was *for a fraud* with which these appellants were not connected, they were not the assignees under the assignment, and they were not called upon to maintain the actual integrity of an assignment to which they were not parties, and under which they had received no part of the judgment debtors' funds or assets.   *Drake on Attachment*, sec. 458.   Even in equity the participants in the fraud are necessary parties, and must be before the Court in such a position as to defend their rights.   *Hill* v. *Reifsnider*, 39 Md. 432.   But as in attachment cases, the law Courts have no equitable jurisdiction to settle equitable rights between the garnishee and defendant. *Peoples' Bk.* v. *Shyrock*, 48 Md. 435 ;   *Morton* v. *Graffin*, 68 Md. 563, it would seem they could not have any jurisdiction to settle equitable rights between the defendant and a third party, in a suit against a garnishee.   This rule should be most strongly enforced in a case where the attachment is on judgment and is uniformly treated as an execution merely.   *Bank* v. *Jaggers*, 31 Md. 48.

The plaintiff, then, by way of rebuttal to overcome the effect of the assignment to Mr. Fox, put in evidence the

original assignment, which is the same as the certified copy, except that it appears written on Mr. Fox's office paper, and is dated March 28, 1895, and proved by the assignee that Mr. Hopper asked him to accept the assignment for the benefit of certain creditors of Mr. Hopper, and when he expressed his willingness to do so, that Mr. Hopper wrote the assignment, and then Mr. Fox gave Mr. Hopper receipts, naming the creditors who were to be paid, and this receipt was produced.

The Court determined that the assignment from Hopper to Fox and Fox's receipts to Hopper constituted one transaction, and that, taken together, they were to be treated as conclusively fraudulent, by operation of law, as against the plaintiff corporation, and could not be relied on by the garnishees to prevent a verdict against them in favor of the plaintiff.

The theory of the lower Court was that the assignment and receipt of the assignee were in substance a deed for the benefit of creditors, as ordinarily known in practice, and that therefore they fell within the decisions applicable to transactions of such character—that therefore as this assignment preferred certain creditors and did not, in fact, dedicate all the assignor's property to the payment of his debts, and furthermore, inasmuch as the receipt of the assignee contained the clause, " Balance to be paid as may be directed by Harrison Hopper," the same was bad by construction of law.  This deed of assignment and receipt exact no releases and in no way and by no legitimate construction form any such transfer.  On the other hand, they simply evidence the same substantial character of assurance as did the deed in the case *Fouke* v. *Fleming*, of which this Court said : "Instead of regarding this (as insisted upon by the appellees) a deed of trust or assignment for the creditors generally of the grantor, it is, in our opinion, simply a deed of trust, or *quasi* mortgage designed to secure the payment of a few specified debts, &c." *Fouke* v. *Fleming*, 13 Md. 406.  And again, " Believing this to be a conveyance designed only *as*

*a security for particular debts*, and not a voluntary convey-ance by a creditor for the payment of his debts generally, and regarding it as a *quasi* mortgage, as has been previously said, we do not think that a reservation of the surplus to the grantor after paying those particular debts can render the deed void. Such reservation will secure to the grantor nothing more than he would be entitled to in the case of a technical mortgage." *Fouke* v. *Fleming*, 13 Md. 406; *Price* v. *Deford*, 18 Md. 495; *State* v. *Bank*, 6 G. & J. 219; *Houston* v. *Newland*, 7 G. & G. 491.

A debtor has this right apart from the provisions of the bankrupt or insolvent. *Trust Est. of Woods, Weeks & Co.*, 52 Md. 536. And in this case as in the case last cited, there is no question of the insolvent statutes. It is only when the preferences are not *bona fide*, that a debtor in failing circum-stances may not give the same. *Glenn* v. *Grover*, 3 Md. 225; *Foley* v. *Bitter*, 34 Md. 653; *Brooks* v. *Marbury*, 11 Wheat. 88 and 89. Nor will the mere fact that the assign-ment, operates to give a preference to the exclusion of other creditors, authorize the Court to treat it as *mala fide*. *Rich* v. *Levy*, 16 Md. 79 and 85; *Bruce* v. *Smith*, 3 H. & J. 499, page 503.

As the attaching creditor had acquired no lien upon the property passing under this deed of assignment, and as the rights of the parties interested thereunder, as evidenced by the receipt of the assignee are not affected, as an entirety, by their subsequent acquiescence in the order of payment fixed by the memorandum upon the back of the receipts, it is inconceivable as a legal proposition, how third parties can be injured by any change in the order of priority of pay-ment agreed among themselves and with the trustee. There is no cause of action in any case, unless the plaintiff can show legal injury to himself, otherwise, no matter how violative the act might be of the principles or rules of law, it would be only *damnum absque injuria*. These *cestui que trustents* who are apparently competent to act for themselves and have ratified and confirmed the order of payment indi-

·cated upon the back of the paper, are the only persons in-
·terested in the proper application of trust fund.   Their act
·is, it is perfectly clear, one either ante-dating the attachment
·or retroacting to and taking effect from the time of the fix-
·ing of this order of payment, which is shown to have been
·either the same day or one or two days after the assignment.

*William H. Brune* and *Edwin J. Farber* for the appellee.

The Court below ruled correctly in giving its instruction
to the jury to the effect that, upon the undisputed facts in
the case, the assignment from Hopper to Fox was fraudulent
·in law and invalid against the plaintiff.   It was proved that
.said assignment was executed on March 28th, 1895, and
that upon its execution and delivery Fox gave to Hopper a
receipt of the same date, in which were the names of certain
.alleged creditors of Hopper, to whom were to be paid, in
the order specified in the body of the receipt, the proceeds
of Hopper's interest in the estate of Isaac Albertson, late
·of Baltimore City, and at the end of which receipt were the
·words " *balance to be paid as may be directed by Harrison
Hopper*" (all in Hopper's handwriting), and that the original
·order in which said creditors were to be paid was, after the
·execution of the assignment and receipt, changed by Har-
.rison Hopper in accordance with pencil memoranda made
by him on the· obverse side of the receipt and that these
·creditors were paid by Fox in full, in the order named by
the penciled memoranda made by Hopper on the back of
the receipt after its execution (possibly a day or so there-
after), from funds received from Isaac Albertson's estate,
until the funds so received were exhausted.   That there was
no money consideration for said assignment ; that said re-
ceipt was not recorded ; that (by admission, subject to ex-
·ception) *at the time of said assignment Hopper was heavily
indebted and indebted beyond his assets*, but that he then
*owned some other property* besides that conveyed by the
assignment ; also, that he had the assignment acknowledged
.and recorded, but that the receipt was not recorded.

All these facts are undisputed and establish the assignment from Hopper to Fox as one *fraudulent in law and therefore void as against creditors* for the following reasons :

1. It was made in *secret trust* (which is one of the best recognized badges of fraud), and is void as against creditors : *Bump on Fraud. Conv.*, secs. 51, 53, 55 ; 27 *Am. & Eng. Enc. of Law, &c.*, 9, 10 ; 8 *Am. & Eng. Enc. Law and Eq.* p. 761; 2 *Thompson on Trials*, secs. 2016–7 ; *Franklin* v. *Claflin*, 49 Md., 24, 44 ; *Bank* v. *Yeatman*, 53 Md. 443 ; *Hoffman* v. *Gosnell*, 75 Md. 577 ; *Birely* v. *Staley*, 5 G. & J. 432 ; *Jones* v. *Slubey*, 5 H. & J. 372 ; *Hertel* v. *McDonald*, 2 Md. Ch. 128 ; *Rice* v. *Cunningham*, 116 Mass. 469 ; *Wimbly* v. *Hill*, 9 N. H. 31; *McCulloch* v. *Hutchinson*, 7 Watts (Pa.) 434.

2. It was *not made in good faith* as against the appellee, *not being a full, open and absolute conveyance of all of Hopper's property for the benefit of all his creditors equally*, but a clandestine disposition of a part of it, and that too at a time when he was indebted beyond his assets ; and the attempted preferences being tainted with fraud, the assignment cannot be sustained, even if the preferred debts were themselves *bona fide*, and even if Hopper was not then actually insolvent. *Bump on Fraud. Con.*, secs. 55, 198 (edition of 1896) ; 8 *Am. & Eng. Enc., Law & Eq.* pp. 768–9 ; *Hodge and Mc-Lane on Attachment*, sec. 155 ; *Betts* v. *Union Bank*, 1 H. & G. 126 ; *Green* v. *Trieber*, 3 Md. 11, 39 ; *Malcolm* v. *Hodges*, 8 Md. 418, 426 ; *Bridges* v. *Hindes*, 16 Md. 101; *Insurance Co.* v. *Wallis*, 23 Md. 173 ; *Kalkman* v. *McElderry*, 16 Md. 56 ; *Sangston* v. *Gaither*, 3 Md. 40 ; *Rosenberg* v. *Moore*, 11 Md. 376 ; *Foley* v. *Bitter*, 34 Md. 646 ; *Bank* v. *Lanahan*, 60 Md. 477 ; *Schuman* v. *Peddicord*, 50 Md. 560 ; *Birely* v. *Staley*, 5 G. & J. 433.

In *Kalkman* v. *McElderry*, 16 Md. 68, it was held, in the case of an assignment which *did not on its face transfer all the property of the debtor or exact releases*, that " such an assignment will not be considered as beneficial (to the grantor's creditors) *unless* the deed devotes the property *absolutely* and

*under all circumstances* to the payment of the debts secured,"
and that " a deed, which postpones a creditor in the collec-
tion of his debt beyond the date of its maturity, is not valid
as a conveyance of the property mentioned in it, until it is
assented to by the creditors.   Until that it is a mere power,
and may be revoked by the levy of an execution by cred-
itors on the property intended to be conveyed by it. Neither
will the assent of the creditors to such a deed be presumed."

3. Its inevitable result was to hinder, delay and defraud
the appellee as a then subsisting creditor of Hopper, and it
was therefore void as against the appellee under the statute
of 13 Eliz. ch. 5, secs. 1, 2, 6 (*Alex., Brit. Stat.* pp. 378–
380) ; *Bump on Fraud. Conv.*, secs. 21, 23, 34, 39, 44, 47 ;
*Glenn* v. *McNeal,* 3 Md. Ch. 349 ; *Bank* v. *Inloes,* 7 Md.
390 ; *Whedbee* v. *Stewart,* 40 Md. 414 ; *Williams* v. *Banks,*
11 Md. 198 ; *Sangston* v. *Gaither,* 3 Md. 40 ; *Cooke* v. *Cooke,*
43 Md. 522 ; *Foley* v. *Bitter,* 34 Md. 653 ; *Gebhard* v. *Mer-
feld,* 51 Md. 322 ; *Zimmer* v. *Miller,* 64 Md. 296 ; *Diggs*
v. *Cullough,* 69 Md. 592.

A debtor's fraudulent intent is presumed, if creditors are
*actually* hindered, etc. ; nor need such fraud be known to
the grantee : *Riley* v. *Carter,* 76 Md. 510 ; *Green* v. *Trieber,*
3 Md. 40 ; *Goodman* v. *Wineland,* 61 Md. 449 ; *Malcolm* v.
*Hodges,* 8 Md. 425 ; *Farrow* v. *Hayes,* 51 Md. 504 ; *Bump
on Fraud. Con.*, sec. 334 ; *Schuman* v. *Peddicord,* 50 Md.
563 ; *Cone* v. *Cross,* 72 Md. 103 ; *Foley* v. *Bitter,* 34 Md.
654 ; *Whedbee* v. *Stewart,* 40 Md. 424.

4. *The Assignment to Fox is void, because Hopper re-
tained,* under the terms of said receipt and as shown by his
conduct contemporaneous with (or immediately prior or
subsequent to) the execution of said assignment and receipt,
*an interest in, and control over, the property mentioned
therein.   Franklin* v. *Claflin,* 49 Md. 24 ; *Whedbee* v.
*Stewart,* 40 Md. 421 ; *Bridges* v. *Hindes,* 16 Md. 104 ;
*Green* v. *Trieber,* 3 Md. 39 ; *Malcolm* v. *Hodges,* 8 Md. 418 ;
*Bump on Fraud. Con.*, secs. 174, 339, 359 ; *Price* v. *Pitzer,*
44 Md. 528 ; *Sangston* v. *Gaither,* 3 Md. 53 ; *Inloes* v.
*Bank,* 11 Md. 183.

5. The assignment to Fox was not only not made in good faith but was *without consideration*, and therefore void as against creditors. *Cunningham* v. *Dwyer*, 23 Md. 231 ; *Ratcliffe* v. *Sangston*, 18 Md. 383 ; *Busby* v. *Reese*, 38 Md. 268 ; *Bump on Fraud. Con.*, sec. 56 ; *Harris* v. *Alcock*, 10 G. & J. 248.

6. (*a*). Even were said assignment otherwise valid, neither Hopper, Fox, nor any of the parties named in said receipt, is entitled to any benefit or advantage from the recording of said assignment, because said receipt, being in the nature of a *defeasance* or *instrument explanatory thereof*, was not *recorded* with it. *Md. Code P. G. L.*, Art. 66, sec. 1 ; *Artz* v. *Grove*, 21 Md. 456 ; *Farrell* v. *Bean*, 10 Md. 217 ; *Waters* v. *Riggin*, 19 Md. 536 ; *Hoffman* v. *Gosnell*, 65 Md. 577.

6. (*b*). It was necessary for the assignment itself to be recorded (although Hopper did not intend to place it on record or even to acknowledge it, until advised so to do by Mr. Musselman, one of the garnishees), as conveying what was, at the time of its execution, an interest in land, or partly so. It was therefore not merely an order for the payment to Fox of the money into which that interest was subsequently converted ; but even if it were, it would still be fraudulent and therefore invalid as against the appellee.

6. (*c*). Even, however, if the assignment did not have to be recorded, the recording of it, without recording the receipt or explanatory instrument at the same time, was calculated to work a greater deception than if neither had been put on record. *McCulloch* v. *Hutchinson*, 7 Watts (Pa.) 436.

7. The assignment was also *invalid* if made for the *purpose, or with the result, of concealing or covering up the debtor's property.* Such a conveyance, even if apparently fair and valid, is as much within the condemnation of the statute (13th Eliz., chap. 5), if the fraud were written on its face. *Collier* v. *Hanna*, 71 Md. 253 ; *Main* v. *Lynch*, 54 Md. 658.

BRYAN, J., delivered the opinion of the Court.

The Franklin Bank of Baltimore obtained a judgment against Harrison Hopper, and caused an attachment to be issued thereon. The attachment was laid in the hands of Stockbridge and Musselman, executors of Albertson, deceased; and also in the hands of Henry W. Fox. This appeal does not concern the attachment against Fox. The executors of Albertson pleaded *nulla bona;* issue was joined and verdict and judgment rendered against the garnishees. The garnishees have appealed.

It appeared that Harrison Hopper was entitled to a distributive share of the real and personal estate of Isaac Albertson, deceased, under his will; and that since the attachment was laid the executors had passed administration accounts in the Orphans' Court which showed that they retained in their hands as part of Hopper's distributive share a sum of money more than sufficient to pay the judgment in favor of the Franklin Bank. It also appeared that nearly a year before the issuing of the attachment Hopper executed and delivered to Fox the following paper :

" BALTIMORE, March 28, '95.

" For value received, I hereby assign to Henry W. Fox all my right, title and interest under the will of Isaac Albertson, late of the city of Baltimore, and in. and to the estate of said deceased.

HARRISON HOPPER, (Seal)."

" Witness : Chas. J. Fox."

It was acknowledged and recorded among the land records of Baltimore City within four days after its date. A certified copy of the paper under the seal of the Clerk of the Superior Court was offered in evidence ; and the original paper was also produced and proved. One of the executors and garnishees testified that he and his co-executor were informed of this paper before it was recorded ; and that they had acted upon it, and had paid out large sums of money to Mr. Fox ; and that they considered it to be a good and valid assignment. It was also in evidence that at the time the above

paper was executed and delivered to Fox, he executed and delivered to Hopper a receipt in the following terms : "Received of Harrison Hopper an assignment of his interest in the will of Isaac Albertson, late of Baltimore City ; the proceeds of the same to be paid as follows, viz : (Here follows a list of debts amounting to more than sixteen thousand dollars). Balance to be paid as may be directed by Harrison Hopper." And also that by written agreement under seal among themselves the creditors changed the order in which the debts were to be paid. And also that Fox had paid more than six thousand dollars in discharge of these debts ; and also that the debts mentioned in the receipt were really and in good faith due by Hopper to the creditors therein named. The Court instructed the jury that the assignment from Hopper to Fox was fraudulent in law and invalid as against the plaintiff, and that the garnishees could not rely upon it to prevent a judgment against them.

It was not necessary to record the assignment from Hopper to Fox, to make it operative to convey the money in the hands of the executors. No real estate is in question in this case ; and we have therefore no concern with it, nor with the effect of the recording respecting it. In *Glenn* v. *Grover*, 3 Md. 225, it was said to be well-settled that a debtor in failing circumstances might prefer one creditor to another by a transfer of his property made in good faith ; and that it was equally clear that if such a transaction should be assailed on the ground of fraud, that the *onus* of proof would be on the party impeaching the assignment. This was a statement of a doctrine which had been declared in *Hickley* v. *Farmers' and Merchants' Bank*, 5 Gill & Johnson, 378, and which has been stated to be the law of Maryland in a great number of other cases. It has been settled ever since *Sangston* v. *Gaither*, 3 Maryland, 40, that an assignment for the benefit of creditors, exacting releases, must transfer all the debtor's estate ; and that consequently a reservation to the debtor of the surplus after paying preferred creditors will avoid the deed. It is the exaction of

releases which is fatal to the deed.    This is necessarily implied from the decided cases, even where it is not declared in express terms.    It has been expressly held that a deed of trust, which does not exact releases, is not void merely because it does not convey all the grantor's property.  *Hoopes* v. *Knell*, 31 Md. 550 ; *Price* v. *Deford*, 18 Md. 489.  And in *Fouke* v. *Fleming*, 13 Md. 392, it was held that a deed, which conveyed certain specified articles of personal property to a trustee with power to sell the same, and to pay certain specified debts from the proceeds, and to pay the residue to the grantor, was not impeachable because of the reservation of the surplus.

There was no evidence tending to show that the assignment to Fox was fraudulent in fact.    The judgment must be reversed without a new trial, unless there is some question upon which the appellee might recover if the case should be tried a second time.    An exception taken by the plaintiff appears in the transcript of the record.    As the plaintiff took no appeal, the exception is not properly before us.    There are special provisions in the local laws which require us to entertain and decide such exceptions.    These are applicable only to the counties named in them ; for instance Baltimore and Frederick Counties.    As the question, however, appears in the case, we will consider it for the purpose of deciding whether there ought to be a new trial.    It is insisted that the assignment to Fox was not admissible in the evidence under the pleadings in the case.    The plea was *nulla bona*, on which issue was joined.    Under this issue it was competent for the garnishees to prove that they had no property of the defendant in their hands at the time of the laying of the attachment, or at the time of the trial or at any intervening time.    And they had a right to offer the assignment in evidence for the purpose of showing that before the attachment was laid the title to the assets in their hands had been validly conveyed to Fox, and that therefore they did not belong to the defendant.    The evidence

was admitted in accordance with the well established practice.

> *Judgment reversed without a new trial.*

(Decided June 23rd, 1897).