Argued May 25; modified September 6; rehearing denied
October 10, 1933

# UNITED STATES NATIONAL BANK OF PORT-
## LAND ET AL. *v.* EMBODY ET AL.

(25 P. (2d) 149)

*I. N. Smith,* of Portland (Platt, Platt, Fales, Smith & Black and E. M. Morton, all of Portland, on the brief), for appellants.

*George J. Perkins,* of Portland (Perkins & Bailey, of Portland, on the brief), for respondent T. C. Building & Investment Co.

*Nicholas Jaureguy,* of Portland (Jaureguy & Tooze, of Portland, on the brief), for respondents J. Thorburn Ross and Lindsley W. Ross.

BEAN, J. We will first notice the assignment as to the defendant T. C. Company. While Embody was engaged in attempting to sell this timber land, being without funds, through John Shillock, an attorney of Portland, he approached the T. C. Company for a loan of $2,500. Embody proposed that if this defendant would loan him $2,500 he would have a deed to certain residential property in Portland, owned by his nephew, given to this defendant as security for the loan. This property was subject to a first mortgage in the sum of $3,500, held by one Aldrich. The loan was made September 10, 1926, and the deed was executed as security therefor. The amount was to be paid in six months and taken care of out of the commissions received from the sale of the timber. This property at the time was not worth more than the first mortgage and the $2,500 loan. In 1927 Aldrich, the owner of the first mortgage, desired his money, which was due. This defendant was notified of this by Arthur Lewis, attorney for Mr. Aldrich. In order to prevent the foreclosure and at the request of Embody, H. J. Cress, secretary of the T. C. Company, on behalf of the T. C. Company, individually guaranteed this mortgage and at that time paid some of the back taxes and interest on the first

mortgage and since that time up to the time of the trial paid the interest on the first mortgage when due and also the taxes before the same became delinquent, to prevent foreclosure.

In January, 1928, this defendant entered into an agreement with Embody concerning an option which Embody held relative to the purchase of 70,000 shares of stock of Bernier Metals Corporation, sometimes referred to as Morton-Wolsey stock, for $15,000. According to this agreement this defendant was to make an initial payment of $2,000 to the bank, which held the escrow, two payments to Mr. Feike, an attorney, of $500 each, and six payments of $200 each and twelve payments of $100 each, making a total of $5,400, at which time the balance of $9,600 was to be paid in a lump sum, but which this defendant did not agree to pay. The agreement further provided for the sale of the stock and how the proceeds would be divided. If the stock was not sold within thirty months from the date of the contract and this defendant repaid the amount advanced it and certain sums in addition thereto, Embody was to have no further interest in the stock. By the time the assignment involved in the suit was made to the T. C. Company on August 24, 1928, it had paid on this option the sum of $4,250, and there remained $1,100 to be paid before the lump sum of $9,600 was due, as one of the payments of $500 to Mr. Feike was satisfied by the payment to him of $450. At the time of the assignments no one knew how much the commission would amount to. As stated by Virgil Crum, one of the receivers, "It took a long time; the property had to be cruised and we had to settle on the cruises, and there was a lot of things entered into it. It was a long time until the definite amount was set-

tled''. The amount of the commissions to be paid was contingent on the amount paid on the purchase price.

According to the testimony of Mr. Crum the commissions due on the sale of the different tracts of land were paid as follows:

| "Date | To Whom Paid | Tract | Amount |
|---|---|---|---|
| 8-6-28 | C. W. Embody | Pt. of Sec. 36 & 25 | $ 194.75 |
| 8-6-28 | L. W. Ross | Same | 194.75 |
| 2-15-29 | L. W. Ross | North Tract | 1,524.18 |
| 5-1-29 | T. C. Building Co. | North Tract | 1,524.18 |
| 7-26-29 | L. W. Ross | South Tract | 2,338.42 |
| 10-17-29 | Harry Cress | South Tract | 2,338.42 |
| 1-14-30 | L. W. Ross | South Tract | 3,000.00 |
| 1-29-30 | T. C. Building Co. | South Tract | 3,000.00 |
| 2-24-30 | L. W. Ross | North Tract | 750.00 |
| 2-27-30 | L. W. Ross | North Tract | 3,441.94 |
| 2-28-30 | T. C. Building Co. | North Tract | 4,191.94 |
| 2-28-30 | J. T. Edwards | North Tract | 2,000.00 |

Total ........$24,499.58"

According to the assignment to the T. C. Company and the letter explaining the purpose thereof, the money received by this defendant from the receivers was to be applied, first, on the $2,500 loan by the T. C. Company to Embody, with interest at 7 per cent per annum. This loan is admitted by the pleadings. Secondly, the money received was to be applied on the advances made by this defendant for taxes, assessments and interest, on the Aldrich mortgage, and property covered thereby. This mortgage was guaranteed by the defendant almost a year before the assignment and the taxes, interest, etc., had to be paid to keep the mortgage from being foreclosed, and the defendant paying the deficiency, if any, resulting from such foreclosure. Thirdly, the T. C. Company was to retain what it had advanced at the time of the assignment on the Ines Drew escrow agreement, amounting to $4,250 and all additional amounts which this defendant was required to advance, not exceeding $1,100 additional.

$600 additional was actually advanced. About the time of the assignment Embody desired to go on with the purchase of the stock. It was agreed he would assign the commission to take care of the payments which had been made by this defendant and any part payments which this defendant should make, not exceeding $5,400 in all. According to this new arrangement this defendant agreed to advance up to $5,400 if Embody insisted.

In 1927 the holder of the first mortgage threatened foreclosure and this defendant guaranteed the mortgage and at the time of the assignment insisted that the provision in the fourth paragraph in regard thereto be inserted. Embody claimed he personally had received most of the money from the Aldrich mortgage.

The fifth condition of the assignment was that the defendant T. C. Company was to retain and pay out of the money received sufficient to pay ''certain money you owe W. L. Riefenburg and J. R. Morris for their assistance in selling the timber'' not to exceed $5,000. Riefenburg's commission was estimated at $5,760.30 to be paid, one-half by Ross and one-half by the T. C. Company. Due to shrinkage in the purchase price the amount was reduced; that is, the timber cruised much less than was anticipated.

The sixth paragraph of the letter provides that if any money remained, after taking care of the obligations assumed in the preceding five paragraphs and any other advanced by this defendant at Embody's request, it should be paid as Embody might direct.

■ The following amounts were paid by the T. C. Company at Embody's request February 18, 1930: Peters Financial Agency, $284.43; January 22, 1930, J. T. Edwards, $1,000. Edwards claimed he was en-

titled to a part of the commission for services performed and threatened to take proceedings to prevent further carrying out of the deal in the timber. The purchasers, it appears, took a portion of the timber at different dates, when the payment would be made and the commissions would be earned. Edwards first demanded $2,700. This was compromised by the T. C. Company and Ross and they gave orders to the receiver for $2,000, $1,000 from the money coming to each of them. Mr. Cress testified that Embody agreed to this settlement. Embody protested Edwards' claim and claimed, in substance, that he agreed with Edwards that if Edwards would put Riefenburg in to finish cruising the timber he would stand the expenses thereof. He claimed they put in some one other than Riefenburg and therefore he disputed Edwards' claim. It is plain from the record that the amount was due Edwards from C. W. Embody and the same was properly paid by the defendants.

C. W. Embody testified that the notes given to Ross were for losses of the Embody Lumber Company and that such losses were incurred while the 12½ shares of the capital stock were held by W. L. Riefenburg. It will be remembered that Riefenburg also signed the notes given to Ross while Embody was the owner of no more than one share of stock of the Embody Lumber Company.

In July, 1929, Embody wanted to borrow some money from the T. C. Company, which was refused. Embody then went to Mr. Timms, who was interested in the T. C. Company and who advanced $1,500 to Embody on his note. Embody gave Timms an order on T. C. Company to pay the note out of the amount of the commission assigned. This note and interest was

paid by the T. C. Company to Timms on March 4, 1930. Before this suit was commenced the bank had Embody before the court on supplementary proceedings relative to the payment of the judgment which the bank had against him. Pursuant to request the T. C. Company gave a statement of its account against Embody to be used in that proceeding and which is in evidence. This statement shows the different amounts paid by the T. C. Company and the dates thereof. One item, $158.36, was eliminated.

It is alleged in paragraph XIV of the T. C. Company's answer that Embody gave to the T. C. Company orders to pay Riefenburg $2,880.15 and Morris $250, which orders were accepted by the T. C. Company, and that $500 had been paid to Riefenburg. These sums were for services rendered Embody in earning the commission. These allegations are admitted by plaintiffs' reply. Plaintiffs allege that this was done with full knowledge of the insolvency of the defendant Embody and of his indebtedness to plaintiffs and others, with the intent on the part of defendants Embody and T. C. Company to prefer the defendant T. C. Company. Plaintiffs admitted that Embody directed the T. C. Company to pay Timms the sum of $1,534, which was paid. The T. C. Company alleges that Embody directed the T. C. Company to pay, and it did pay Edwards from the commission, the sum of $1,000. The payment to Peters Financial Agency of the sum of $248.43 by the T. C. Company is also admitted. This company alleges that Embody authorized it to deduct from the commissions assigned the money advanced, with interest thereon at 7 per cent per annum and that the assignment was made to secure moneys advanced prior and subsequent to the assignments, with interest

at 7 per cent per annum, but plaintiff avers that all of these payments were made with the knowledge of the insolvency of the defendant Embody and with the intent on the part of the T. C. Company to hinder, delay and defraud the creditors of defendant Embody, as alleged in plaintiffs' complaint. All the moneys advanced for Embody up to the time the suit was commenced are admitted by plaintiffs. The T. C. Company asserts that it advanced Embody, up to the time the suit was started, $10,709.77, and from that time to the date of the trial $318.88 more, or a total of $11,028.65, all of which it was compelled to pay.

The statement made by the T. C. Company, commencing September 10, 1926, with a loan to Embody secured by deed to the T. C. Company, property at 555 Marguerite Avenue, $2,500, $426.75 interest, and various items, interest on first mortgage $61.25, amount paid Bernier Metal Corporation $8,078.34, interest $881.11, with interest at 7 per cent computed upon the balance, after deducting the amount of the commission paid to it by the receivers, to the date of the trial, totals $1,223.85 in excess of the amounts received by the T. C. Company, viz., $11,054.54, exclusive of the $1,000 paid Edwards. Mr. Cress states that they have approximately $6,272 "still coming", or one-half of the amount of commissions to be paid.

■ It is contended by plaintiffs that the transaction in regard to the Bernier Metal Corporation stock was a partnership or joint venture between the T. C. Company and Embody. However we may name this deal, it is shown by the record that the matter was all agreed to and settled between Embody and the T. C. Company, so that Embody was to take all of such stock and the T. C. Company was to pay what they were obligated

to pay. The amounts which the T. C. Company paid upon the order of C. W. Embody were definite amounts for which the T. C. Company became obligated to pay some time before this suit was commenced, and under the assignment the T. C. Company, in equity, is entitled to be reimbursed.

■ The fifth provision is in regard to payments by the T. C. Company out of the commission money assigned provided there is sufficient on hand after taking care of all other obligations accepted by it and on an order "you are to give us later as to exact amount, certain money you owe W. L. Riefenburg".

It is clear from the language used that it was not contemplated by either the T. C. Company or Embody that the company should pay Riefenburg unless Embody was owing him. As noted, Riefenburg was a co-maker with Embody on the notes payable to Ross, which Embody paid by an assignment to Ross of one-half the commission. Therefore we fail to see how, in equity or in law, the T. C. Company could fully pay Riefenburg, when, according to the record, Riefenburg was equally responsible with Embody upon the notes given to Ross. We fail, therefore, to see how we can approve the payment made by the T. C. Company to Riefenburg of $500, or the making of any further payments to him.

■ We think the T. C. Company had the right to take the assignment as security for the payment of its present debts from Embody and for future advances which it had legally obligated itself to make, and no more. The assignment was similar to a mortgage. As stated in plaintiffs' brief, (1) if a mortgagee is obligated to make advances to the extent of a sum stated in the mortgage, the lien of the mortgage is security for

all such advances, whether made before or after notice of subsequent encumbrances; (2) if the mortgagee is not obligated to make the advances, the mortgage lien attaches only to such advances as are made before notice of the junior encumbrance; (3) in the latter case actual notice is sufficient. *Hendrix v. Gore,* 8 Or. 406; *Nicklin v. Betts Spring Co.,* 11 Or. 406 (5 P. 51, 50 Am. Rep. 477); 1 Jones on Mortgages, 524, § 374.

Plaintiffs contend that the future advance clause in the sixth paragraph of the letter, containing the provisions of the assignment to the T. C. Company, permits Embody to create new indebtedness after the assignment and gives such new indebtedness, by his order, precedence over the judgments in question. This provision is no more than the result would be if a mortgage were given for security of payment. Any balance over and above the payment of the mortgage is properly provided to be paid to the mortgagee, but it must be remembered that when the rights of creditors have intervened by attachment or suit the order of the assignee Embody should not be effective.

■ The amount yet to be paid on the assignment agreement to the T. C. Company is claimed to be $7,682.65, and deducting the amount estimated by Mr. Crum, to be paid by the receivers, if the balance of the timber deal is carried out, $6,272.95, it leaves a shortage claimed by the T. C. Company of $1,409.70. The T. C. Company had received a sufficient amount to pay the first loan of $2,500 on January 29, 1930, according to the provisions of the first paragraph of the conditions. Interest on that amount should cease on that date. In order to protect this first loan of $2,500, Mr. Cress, for the T. C. Company, assumed the first mortgage on the Marguerite Avenue property of $3,500, and was re-

quired to pay taxes and interest, which is computed up to February 3, 1931. After the first loan of $2,500 was satisfied the T. C. Company would have no further interest in the Aldrich mortgage, except to comply with their covenant to pay. The interest on this mortgage and taxes should not be paid by the T. C. Company for an indefinite period, or after January 29, 1930. The amount charged to the T. C. Company on this account, beginning May 12, 1930, should be eliminated from their claim.

The Marguerite Avenue property is in a somewhat peculiar condition, as shown by the record. If the T. C. Company pays off the first mortgage the property goes, as we understand, to some relative of Embody and the creditors would not be benefited in any manner whatever. In order to satisfy the first loan of $2,500, the T. C. Company would be paying that loan and the first mortgage of $3,500, $6,000, with a large amount of interest and taxes.

■■ The T. C. Company states that it does not contend the entire amount assigned to it, if more than necessary to pay the debts due it, was to be retained. We think the same rule should obtain as to Ross. The taking of the assignment of one-half the commissions due Embody by the defendants to secure the payment of money due and to become due from Embody, and for which they were obligated to pay, was a legitimate transaction and would not contravene the statute relative to fraudulent conveyances. *Currie v. Bowman,* 25 Or. 364 (35 P. 848); *Jolly v. Kyle,* 27 Or. 95 (39 P. 999); *Delaney v. Valentine,* 154 N. Y. 692 (49 N. E. 65); *Stockbridge v. Franklin Bank,* 86 Md. 189 (37 Atl. 645); *In re A. L. Robert-Shaw Mfg. Co.,* 133 Fed. 556; *Huntley v. Kingman,* 152 U. S. 527 (14 S. Ct. 688, 38 L. Ed. 540); 27 C. J. 604, §§ 349 and 350.

A careful reading of the testimony convinces us that the assignments were made in good faith and with no intent on the part of the assignees to hinder, delay or defraud any creditor. Nevertheless it should be ascertained whether there is any balance from either after satisfying the demands of the defendants. This is impossible to be done at the present time. It is not known how much will be paid on the commissions and it may be possible that some explanation will be desired to be made in regard to the Marguerite Avenue property.

In 27 C. J. 604, §§ 349 and 350, the following statement is made:

"§ 349. It is a general rule that stipulations in a mortgage of realty or personalty or in an instrument in the nature of a mortgage given by a failing debtor reserving to the grantor the surplus proceeds or the unsold property remaining after the payment of the debt or debts secured is but the expression of what the law would imply without a reservation, and does not vitiate the instrument.

"§ 350. * * * But a stipulation in an assignment of property securing an indebtedness, reserving the right to direct the application of surplus proceeds, is no more than the law implies in every transfer of property as a security for debts and does not render the instrument void."

J. Thorburn Ross has no right to claim any part of the commission on account of his figuring in a prior effort to make a sale of the timber. The Embody Lumber Company figures in several of these transactions. This company was incorporated in 1924. At a meeting of the incorporators March 6, 1924, the stockholders and the number of shares and their official positions were as follows: John W. Embody, president, 25

shares; J. Thorburn Ross, vice-president, 12½ shares; W. L. Riefenburg, secretary-treasurer, 12½ shares, total 50 shares. C. W. Embody was not an incorporator. Some time afterward he held one share and had a right to sell the lumber, the product of the plant. Afterwards Mr. Riefenburg bought the stock of J. W. Embody. July 16, 1925, C. W. Embody, W. L. Riefenburg and J. Thorburn Ross made a deal with James Manary, whereby all of the Embody Lumber Company stock was sold to Manary.

J. Thorburn Ross made loans to the Embody Lumber Company, evidenced by notes signed by the Embody Lumber Company, by C. W. Embody, vice-president, by W. L. Riefenburg, secretary; also by C. W. Embody and W. L. Riefenburg, personally, as follows:

| | |
|---|---:|
| June 18, 1925 | $1,500 |
| Feb. 17, 1925 | 3,000 |
| April 19, 1925 | 800 |
| May 7, 1925 | 5,000 |
| June 6, 1925 | 1,000 |
| April 27, 1925 | 540 |
| Total | $11,840 |

Each note bears interest at 8 per cent. The note for $800 dated April 19, 1925, in favor of L. W. Ross, was signed by the lumber company and by J. Thorburn Ross, C. W. Embody and W. L. Riefenburg. The note for $1,500 dated June 18, 1925, in favor of J. Thorburn Ross, signed by the lumber company and by C. W. Embody and W. L. Riefenburg is mentioned in Ross's answer as having been paid by the assignment. The note was presented by Mr. Ross but was not cancelled. He states that his recollection is that one-half of this note was to be charged to Riefenburg, to be taken out of

his portion of the commission, and the other half was cancelled as to C. W. Embody. The notes other than the $1,500 note, dated June 18, 1925, were delivered to C. W. Embody at the time of the assignment and cancelled by him. In August, 1928, there was due on these notes, principal and interest, the sum of $13,856.78. The Ross notes were paid wholly from Embody's one-half share of the commission. Riefenburg was relieved from payment of the notes through Embody's payment and was to be paid part of the commission in cash. By this procedure the creditors, including plaintiffs, were prevented from receiving any part of such sums. This arrangement was participated in by defendant Riefenburg and by Mr. Cress, representing the T. C. Company.

Ross acknowledges payments from the receivers as follows: July 26, 1929, $1,718.93; July 26, 1929, $2,338.42; January 14, 1930, $3,000; February 24, 1930, $750; February 28, 1930, $3,441.44. In Ross's brief a statement is made computing the interest to February 28, 1933, on the balances, after crediting amounts received if the notes had not been cancelled. He states the balance due from Embody to Ross was $5,588.77.

Defendant Ross suggests in his brief in regard to the Riefenburg matter as to the collection of the entire amount of the note from Embody, "If as between themselves Embody and Riefenburg were joint sureties for Embody Lumber Company, then Embody now has his right of contribution against Riefenburg". We do not think that this extends as far as to permit Ross to collect from Embody and pay to Riefenburg when Embody, in equity, was not indebted to Riefenburg. Therefore, the payment by Ross to Riefenburg of $500

is not approved, nor the making of any further payments to him until a further hearing showing the same to be equitable.

▇ The notes collected by Ross were presumed to have been given for a valuable consideration. Every person whose signature appears on a negotiable instrument is presumed to have become a party thereto for value. They were issued for a valuable consideration as shown by the checks of Ross in evidence. It is not shown that the notes were issued without consideration. Section 57-201, Oregon Code 1930; *Kemppainen v. Suomi Temperance Society,* 128 Or. 643 (275 P. 680).

▇ C. W. Embody and Riefenburg were each an accommodation party on the notes given to Ross. They were liable on the instruments to the holder for value, notwithstanding that Ross may have known at the time that they were accommodation parties. Section 57-206, Oregon Code 1930. Where one of two co-sureties is compelled to pay the note, he is entitled to contribution against the other surety for one-half the amount paid. *Hunter v. Harris,* 63 Or. 505 (127 P. 786).

W. L. Riefenburg is not a party to this suit and the equities as to him cannot be adjusted. The statement of the notes and interest of Ross as contained in his brief should be corrected in this. On August 24, 1928, the Embody notes were satisfied and cancelled. Any delay in obtaining the money from the payment of the commissions by Ross would entitle him in equity to interest thereon, which should be computed at 6 per cent per annum. It is not clear that there will be any balance remaining for creditors.

▇ The defendants, being creditors of Embody, were entitled to secure themselves or collect their pay from Embody. The debtor had a legal right to prefer

these two creditors to others. *Ball v. Danton*, 64 Or. 184 (129 P. 1032); *Sabin v. Columbia Fuel Co.*, 25 Or. 15 (34 P. 692, 35 P. 854, 42 Am. St. Rep. 756). We are not aware that the appellant contends otherwise.

In the case of *Jolly v. Kyle*, supra, this court, in referring to fraudulent conveyances, said at page 101:

"And a debtor, having the right to prefer certain creditors, is not required, in the exercise of that right, to convey his property directly to such creditor, but he may transfer it to a third person, and pay the proceeds to his preferred creditors. * * * A conveyance is not fraudulent because the debtor has transferred his property with a view to prefer one creditor to another, but the fraud is in the intention to prefer himself to all creditors."

It is incumbent upon the plaintiffs in this case to first prove that Embody attempted to defraud his creditors by making the assignments to defendants. They must prove that the defendants had notice of the fraudulent intent on behalf of Embody and participated in the fraudulent transaction. Courts of equity will never presume a fraud when the transaction under investigation is equally susceptible of two explanations, one of which is consistent with the fraudulent intent and the other with good faith and fair dealing. Notice of the fraudulent intent of the grantor must be actual. *Coolidge v. Heneky*, 11 Or. 327 (8 P. 281).

The real and ultimate question for determination is the mala fides of the transaction. The notice must be more than would excite the suspicion of a cautious and wary person. It must be so clear and undoubted with respect to the existence of a prior right as to make it fraudulent in him afterwards to take and hold the property. *Ball v. Danton*, supra. It is a general rule

that fraud must be shown by a preponderance of the evidence, which should be so clear and strong as to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud or act in bad faith. 27 C. J. 62, § 199; *In re Locust Building Co.,* 299 Fed. 756.

We conclude that the assignments were valid and binding to the extent of the amount due to the assignees and for what they are each obligated to pay for C. W. Embody. If there be any sum remaining from the commissions after satisfying such obligations, the same should be applied in payment of plaintiff's claims. The claim of Riefenburg should be adjusted equitably and for that purpose plaintiffs should be permitted to make Riefenburg a party defendant, if they so desire.

As the amount of commissions to be received is not yet fixed and the result cannot be determined, the costs and disbursements should await the final disposition of this suit.

For these purposes and to this extent the decree of the lower court will be modified and the cause remanded for such further proceedings as may be deemed proper, not inconsistent herewith.

ROSSMAN, KELLY and CAMPBELL, JJ., concur.