Argued and submitted June 18, 1986, reversed and remanded April 8, 1987

TYLER et ux,
*Respondents,*

*v.*

BUTCHER et ux,
*Respondents,*

ROLAND et al,
*Defendants,*

BUTCHER et ux,
*Appellants.*

(83-2229-NJ-2; CA A37061)

734 P2d 1382

Penny Lee Austin, Medford, argued the cause and filed the briefs for appellants. With her on the briefs was Black, Hanson, Crain & Austin, Medford.

James L. Mueller, Medford, argued the cause and filed the brief for respondents Arthur E. Tyler and Fay L. Tyler.

No appearance for respondents Leo Butcher and Joan Butcher.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

El and Sandra Butcher (defendants) appeal a judgment for plaintiffs that foreclosed a mortgage dated September 19, 1977, on real property. In March, 1983, defendants had foreclosed their 1981 trust deed and had acquired title to the property. Plaintiffs and defendants each moved for summary judgment. The court granted plaintiffs' motion, denied defendants' motion and held that plaintiffs' mortgage was superior to defendants' to the extent of the original principal amount of $10,000, with interest at the rate of 10% per annum on $5,000 from January 6, 1979, and on $5,000 from January 19, 1982.[1] We reverse.

On September 19, 1977, Leo and Joan Butcher (the Butchers) borrowed $10,000 from plaintiffs and gave as security a mortgage on the property which the Butchers then owned. Plaintiffs' recorded mortgage disclosed on its face that it secured the sum of $10,000 with interest at 10% per annum. At that time, plaintiffs disbursed $10,000 to the Butchers and recorded the mortgage. Neither the note nor the mortgage contained a future advance clause.

On November 1, 1978, the Butchers paid $10,000 to plaintiffs, but they did not pay the accrued interest on the note. Plaintiffs offered to destroy the note and to record a satisfaction of mortgage, but the Butchers declined. They told plaintiffs that they might need to borrow additional sums and that they wanted the mortgage to serve as security for those sums. On January 6, 1979, the Butchers borrowed $5,000 from plaintiffs, but they did not give a note to evidence that debt. At that time, the Butchers and plaintiffs orally agreed that the recorded mortgage also secured that advance.

Over some period of time before June, 1981, defendants loaned $18,797.97 to the Butchers. In June, 1981, the Butchers gave defendants a promissory note for that amount and a trust deed on the propery as security. Defendants recorded their trust deed on June 12, 1981. They do not claim

---

[1] The second $5,000 consists of the $2,000 advance of January 12, 1982, and $3,000 of a $4,000 advance on January 19, 1982. Plaintiffs also claim priority for interest from January 19, 1982. They do not claim priority for the principal in excess of $10,000, any interest on the excess or any interest computed at a rate in excess of that stated on the face of the mortgage.

that their lien was effective before that date. Before defendants received the promissory note and took the trust deed, plaintiffs told them that the Butchers had repaid the $10,000 principal that the mortgage had secured. Defendants concede that, before they recorded the trust deed, they knew that plaintiffs had loaned an additional $5,000 to the Butchers in January, 1979, but they assert that they did not know that plaintiffs and the Butchers had agreed that the 1977 mortgage would secure that amount. Plaintiffs' affidavits assert that, before defendants made their loan to the Butchers, plaintiffs had told defendants that the mortgage secured repayment of the $5,000 advance. Defendants do not assert that plaintiffs, or anyone else, told them that the mortgage was or would be satisfied.[2]

On January 12, 1982, plaintiffs loaned $2,000 to the Butchers. On January 19, 1982, they loaned them an additional $4,000. Plaintiffs and the Butchers orally agreed at each of those times that plaintiffs' recorded mortgage also secured those advances. The Butchers did not give a note to plaintiffs to evidence either advance. Plaintiffs and defendants do not dispute that the three advances, one in January, 1979, and two in January, 1982, were optional, but the record does not disclose their purpose.

Defendants argue that the priority of plaintiffs' mortgage does not extend to any of the future advances that plaintiffs made, because the mortgage does not contain a future advance clause. Alternatively, they assert that their trust deed prevails over plaintiffs' mortgage as to the 1982 advances, because at that time plaintiffs had constructive notice of the recorded trust deed.

Plaintiffs respond that, although their mortgage does

---

[2] Sandra Butcher's affidavit asserts that "in March of 1981, I was informed that a note secured by a mortgage in the sum of $10,000 owed to the plaintiffs had been repaid." She does not state who told her. The affidavit of Fay Tyler states that, in a conversation in March, 1981, between her, Sandra and Joan Butcher, "it was stated that the original $10,000 which was loaned to Leo and Joan Butcher in September, 1977, had been paid back. It was further stated at that time that a subsequent loan of $5,000 had been made to Leo and Joan Butcher and that the original mortgage was security for repayment of that loan." Defendants do not now claim that they were informed in March, 1981, that the entire note had been repaid. They merely state in their brief here that "plaintiffs and the 'Butchers' represented to defendants that the $10,000 had been repaid."

not contain a future advance clause, it secures optional future advances and that they have priority over defendants' trust deed, because (1) the mortgage discloses on its face that it secures a debt in a stated amount ($10,000) with a stated interest rate (10% per annum); (2) plaintiffs and the Butchers orally agreed when the Butchers gave the mortgage that it would secure future advances; (3) the mortgage was recorded before the trust deed; (4) although the total obligation of the Butchers to plaintiffs was $11,000, plus interest, the total amount for which plaintiffs claim priority does not exceed the principal of the debt stated on the face of the mortgage, plus the interest which would have accrued if the mortgagor had made no payments at all; and (5) plaintiffs made the 1979 advance before the trust deed was recorded and the 1982 advances when they did not have actual notice of the trust deed.

In *Hendrix v. Gore,* 8 Or 406, 409 (1880), the court stated that, as between a mortgagor and a mortgagee,

> "where a mortgage is given in good faith to secure a present indebtedness and future advances, whether the object is expressed in the mortgage or not, it is *valid* to the extent of the lien therein expressly created." (Emphasis supplied.)

The court added:

> "It is always better, however, that the mortgage should be drawn so as to show the true object and purpose of the transaction, for suspicion is engendered by misrepresentation, but disarmed by a statement of the truth." 8 Or at 409. (Citation omitted.)

There, the mortgagors, who owed approximately $400 to the mortgagee, gave him a $1000 promissory note and a mortgage to secure it. The mortgagee elected to advance additional money to pay creditors of the mortgagors. When the mortgagee foreclosed, he alleged that the note and mortgage were given to secure the original debt and optional advances which had later been made. The court held that, despite the absence of a future advance clause in the mortgage, it secured the future advances.[3] Defendants, however, argue correctly that

---

[3] *Hendrix v. Gore, supra,* does not address the applicability of the Parol Evidence Rule. Defendants have not asserted that the note and mortgage, when construed together, unambiguously show that plaintiffs and the Butchers intended that the mortgage secure only the $10,000 debt and that the Parol Evidence Rule would bar

*Hendrix* only considered the *validity* of the mortgage lien between the mortgagor and the mortgagee and did not consider its *priority* over the interest of a third party.

There is authority elsewhere that, if the mortgagee and mortgagor have orally agreed at the time when the mortgagor gives the mortgage that it will secure optional future advances, the priority of the mortgage extends to the future advances, although there is no future advance clause in the recorded mortgage. The mortgagee may assert priority to the extent of a debt which does not exceed the face amount that the mortgage discloses, even if the amount of the debt has varied from time to time within that limit. *See* 1 *Jones on Mortgages,* § 450, 451; *Osborne on Mortgages,* § 116. The proposition is that a subsequent lienholder has notice from the recorded mortgage that there may be a debt outstanding up to the amount stated on its face, even if he does not know of the "contemporaneous oral agreement."[4]

■ We do not accept that rule. The subsequent trust deed holder is held to know what is of record at the time when he records his trust deed. If there is no future advance clause of record, however, he is not obliged to inquire of the mortgagee or mortgagor whether they had a contemporaneous oral agreement. If he lacks actual notice, he may rely on the record.

■ ■ If a recorded mortgage does not contain a future advance clause (or before the subsequent trust deed is recorded, the mortgage is not amended or supplemented of record to add one), the amount of the secured debt that will have priority over the trust deed will not include an optional future advance, unless the trust deed holder has actual notice before he records the trust deed that the mortgagee and mortgagor made a contemporaneous oral agreement when the mortgagor gave the mortgage that the mortgage would secure optional future advances. If the trust deed holder has such actual notice, then the secured debt that has priority over the trust deed will include the optional future advance, provided

---

evidence of a contemporaneous oral agreement that the mortgage would secure any future advances. We do not decide whether the Parol Evidence Rule would have that effect, if defendants had raised it. *See Willamette Prod. Credit Ass'n v. Day,* 167 Or 451, 118 P2d 1058 (1941).

[4] We do not address the question of the effect of a recorded mortgage which does not state on its face the amount of debt secured or the interest rate.

that: (1) the total amount for which the mortgagee claims priority does not exceed the principal of the debt stated on the face of the mortgage, plus the interest which would accrue if the mortgagor had made no payments at all, *see* 1 *Jones on Mortgages* § 450, 451; Osborne, *Mortgages,* § 116; and (2) the contemporaneous oral agreement by its terms covers the advance made and the advance is similar in kind and related to a purpose of the original loan. *See Community Bank v. Jones,* 278 Or 647, 556 P2d 470 (1977); *Credit Alliance Corp. v. Amhoist Credit Corp.,* 74 Or App 257, 702 P2d 1121 (1985); *see also Rutherford v. Eyre,* 174 Or 162, 148 P2d 530 (1944).

Here, the court could not grant summary judgment to either plaintiffs or defendants, because there are genuine issues of material fact whether plaintiffs and the Butchers had a contemporaneous oral agreement[5] and whether defendants had actual notice of it before they recorded the trust deed in 1981.[6] Accordingly, the court erred in granting summary judgment for plaintiffs.

Because they will arise on remand, we comment on other issues in this case. To establish priority of their $5,000 optional advance in 1979 over defendants' trust deed plaintiffs must also prove that the contemporaneous oral agreement covered it so that the mortgage secured it and that the advance was similar in kind and related to the purpose that the parties intended in making the original loan. *See Community Bank v. Jones, supra; Credit Alliance Corp. v. Amhoist Credit Corp.,*

---

[5] Although the affidavits of Arthur Tyler and Leo Butcher state that the parties made a contemporaneous oral agreement, the affidavit of Fay Tyler states only that, at the time the Butchers gave the mortgage, the parties discussed the possibility that the Butchers would need to borrow more money in the future. It states that, on November 1, 1978, when the Butchers repaid the initial principal amount of $10,000, "it was clear *at that point in time* that it was the intention of all parties to this transaction that the mortgage on the real property would continue as security for such future loans." (Emphasis supplied.)

[6] Fay Tyler says in her affidavit that, during a conversation between Sandra and Joan Butcher and herself in March, 1981, "it was * * * stated at that time that a subsequent loan of $5,000 had been made to Leo and Joan Butcher and that the original mortgage was security for repayment of that loan." Sandra Butcher admits in her affidavit that "at some point in time [she] was informed that an additional $5,000 had been loaned to Leo and Joan Butcher," *but she denies that she was ever told* that the mortgage would serve as security for that loan. There is a genuine issue of material fact whether defendants were on inquiry concerning the existence of a contemporaneous oral agreement.

*supra.*[7]

■■    As to plaintiffs' optional advances to the Butchers in 1982, which were made after defendants had recorded their trust deed, defendants assert that their interest has priority, because plaintiffs had constructive notice from the record of defendants' recorded trust deed. We agree. There is authority that a mortgagee must have *actual* notice of the lien if the intervening trust deed is to have priority over the mortgagee's subsequent optional advance. *See* Osborne, *Mortgages,* § 119; Nelson and Whitman, *Real Estate Finance Law* 892 (2d ed 1985); *see also U.S. Bank of Portland v. Embody,* 144 Or 488, 501, 25 P2d 149 (1933).[8] We reject that rule also. Constructive notice is sufficient. *See Lincoln Federal Savings & Loan Ass'n v. Platt Homes, Inc.,* 185 NJ Super 457, 449 A2d 553 (1982). Accordingly, the lien of defendants' trust deed has priority over the optional advances that plaintiffs made to the Butch-· ers in 1982.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[7] *Community Bank v. Jones, supra,* and *Credit Alliance Corp. v. Amhoist Credit Corp., supra,* are UCC Article 9 cases. The tests which they set forth to determine whether a future advance falls within the terms of a particular future advance clause, however, were intended to prevent "creditor[s] secured as to one line of financing [from] retroactively secur[ing] a second separate indebtedness * * * and * * * step[ping] ahead of others holding perfected security interests in the same property." *Community Bank v. Jones, supra,* 278 Or at 666. That reasoning is also applicable to real estate mortgage financing.

[8] In *U.S. Nat. Bank v. Embody, supra,* the court stated:

"(1) [I]f a mortgagee is obligated to make advances to the extent of a sum stated in the mortgage, the lien of the mortgage is security for all such advances, whether made before or after notice of subsequent encumbrances; (2) if the mortgagee is not obligated to make the advances, the mortgage lien attaches only to such advances as are made before notice of the junior encumbrance; (3) in the latter case actual notice is sufficient." 144 Or at 501.

We are not bound by the *dictum* respecting optional advances.